**Pedro REYES, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education, and Welfare, Defendant.**

**No. 78 Civ. 4036.**

United States District Court, S. D. New York.

Dec. 18, 1979.

Pedro Reyes, pro se.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendant; Peter R. Paden, Asst. U. S. Atty., Borge Varmer, Regional Atty., Region II, New York City, Frank V. Smith, III, Deputy Regional Atty., Dept. of Health, Education, and Welfare, Kansas City, Mo., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff commenced this action to review a final determination of the Secretary of Health, Education, and Welfare (the "Secretary") that denied plaintiff's application for disability insurance and supplemental security income benefits ("S.S.I.").[1] The Secretary moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. The Secretary's determination must be upheld if it is supported by substantial evidence in the record as a whole—that is, " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[2] After a word-by-word reading and a "searching investigation"[3] of the record including the various exhibits and testimony taken before the Administrative Law Judge ("A.L.J."), the Court is persuaded that his findings are supported by substantial evidence and that the Secretary's determination must be upheld.

The basic issue was whether plaintiff was disabled within the meaning of the statute—that is, whether he was unable to per-

---

1. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3) (1974).

2. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

3. *Gold v. Secretary of Health, Education, and Welfare,* 463 F.2d 38, 43 (2d Cir. 1972), quoting *Miracle v. Celebrezze,* 351 F.2d 361, 382–83 (6th Cir. 1965).

form any substantial gainful work due to a medically determinable physical or mental impairment which lasted or could be expected to last for a continuous period of at least 12 months and was so severe that it prevented him from working not only in his usual occupation but in any other substantial gainful work considering his age, education, training, and work experience.[4]

Plaintiff, who was born in Puerto Rico, was 53 years of age and unmarried at the time of his hearing. He had completed three years of grade school in Puerto Rico and came to the United States in 1947. During the period from 1951 to 1969 he worked as a metal polisher, chauffeur, driver, dishwasher, porter, carton box assembler, and deliveryman. Within this period, and again in 1975, he also worked as a silk screen painter, a job that involved some moderate physical labor including lifting, bending, and carrying. He had worked at that job for 7 months from February 1975 until December 1975, with a four-month hiatus when he was laid off by his employer, allegedly because he was unable to carry some boxes due to his back problem. After almost one year without work he resumed employment in October 1976 as a tailor-trainee but quit that job after three weeks allegedly because his back hurt even while he was sitting.

Plaintiff's initial claim for benefits alleged that his inability to work was due to ulcers, osteoarthritis, and psychiatric problems. However, the record indicates that his disability claim essentially rests upon a back condition due to osteoarthritis. The other two ailments, while referred to, are not seriously contended to be disabling within the meaning of the Act; nor is there any evidence to support a claim that they are.

█ It is not disputed that plaintiff suffers pain in his back, has an ulcer and a psychological condition. However, in as-sessing whether singly or in combination, these conditions result in statutory disability, the factors to be taken into account are (1) the objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant; and (4) the claimant's education, background, age, and work experience.[5]

Plaintiff testified that he suffered a back injury in the 1960's that impaired his ability to work in the same way as he had previously; that he has pain in his back, stiffness in both legs; that he suffers dizziness and occasional blackouts in the morning; that his back problem caused him to be laid off from or to leave his last two jobs; that he cannot lift heavy objects and that his doctor told him to avoid "heavy work." He further testified that cold weather exacerbates his back problem, causing him to be unsteady on his feet. Plaintiff's credibility in describing his pain, dizziness, and ailments was somewhat impaired when he described a "broken back" injury he allegedly sustained, whereas current x-rays indicate no evidence of old or recent fracture or dislocation. While the A.L.J. did not question that plaintiff suffered pain at times and accepted his testimony that he was not symptom free, the A.L.J. was of the view that plaintiff's own estimation of his incapacity was not supported by the evidence.

In addition to his own testimony, plaintiff, in support of his claim, submitted a statement from a treating physician who is connected with the Hunts Point Center. The doctor certified that plaintiff has "*bouts* of unstable back due to osteoporosis"[6] (emphasis supplied)—a condition that cannot be characterized as continuous and that does not preclude plaintiff from engaging in any substantial gainful activity.

Also received in evidence were the medical records of Hunts Point Center which indicate that plaintiff has been treated there for complaints of low back pain and a

---

4. 42 U.S.C. §§ 423(d)(1)(A); (d)(2)(A) (1974).

5. *Gold v. Secretary of HEW*, 463 F.2d 38, 41 n. 2 (2d Cir. 1972); *Underwood v. Ribicoff*, 298 F.2d 850 (4th Cir. 1962); *Kaminski v. Califano*, 465 F.Supp. 367, 370 (S.D.N.Y.1979), aff'd 614 F.2d 1288 (2d Cir. 1979).

6. Osteoporosis is a reduction in the quantity of bone or atrophy of skeletal tissue. Stedman's Medical Dictionary (4th Abridged Lawyers' Ed. 1976).

suspected psychoneurotic condition since August 1976, but there are no clinical findings to show any significant impairment. On August 5, 1976, a doctor at the Center reported that plaintiff had "occasional low back pain, accompanied by movement limitation." A letter from the Hunts Point Center dated August 30, 1977 reported that plaintiff "has a lot of physical problems"; that he is still under care at the Center; and that his condition is "stable with medication."

The somewhat ambiguous diagnosis of "bouts of unstable back" by plaintiff's doctor is contradicted by substantial affirmative evidence of an internist who examined plaintiff at the request of the Secretary. Plaintiff's complaint to the examiner, Dr. Yentel, was that he had sporadic episodes of low back pain. On physical examination Dr. Yentel found that the plaintiff was "not in acute distress"; that the x-rays revealed "[n]o abnormalities"; and that the "[l]umbrosacral spine fails to reveal any pathology clinically." Dr. Yentel described plaintiff as overweight and as having low back syndrome with a normal range of motion.

Dr. Sonja Aschkinasi, a psychiatrist, who also examined plaintiff at the request of the Secretary, found plaintiff to be uncooperative and unwilling to give clear information; that he related in a rude and arrogant manner although he was well-oriented in all spheres and his memory and concentration were unimpaired. She further found that plaintiff functions between dull and average/normal on an intellectual level and that he appeared to suffer from no thought disorders, delusions or hallucinations.

Subsequent to the A.L.J.'s decision the Appeals Council received an additional report from the Hunts Point Center containing an opinion which certified that plaintiff "has unstable back of long standing duration and is unable to work." The Appeals Council, however, was of the view that this additional evidence was not supported by the total evidence of the record and did not change the conclusion reached by the A.L.J. in his decision.[7]

Plaintiff's subjective complaints of pain and his descriptions of symptomology, even if not supported by clinical evidence must be considered by the A.L.J. However, this does not mean that they are to be accepted without evaluation.[8] Plaintiff's own estimation of his impairment alone is insufficient to establish the presence of a physical or mental impairment.[9] Moreover, its evaluation by the A.L.J. is based upon consideration of demeanor, credibility, motivation, and medical impairment.[10] The evaluation here was as follows: "After observing the claimant and listening to him testify, the Administrative Law Judge is not convinced that the pain alleged prevents him from engaging in substantial gainful activity. [This] does not mean to imply that the claimant is symptom free, only that his own estimation of his incapacitation is not supported by the evidence." Not only is there support for this finding but nothing has been presented to undermine its integrity.

Nor was the A.L.J. required to accept uncritically and without evaluation the statements of plaintiff's treating doctor and the reports of the Hunts Point Center that plaintiff "was unable to work"; "cannot do heavy work"; "has unstable back of long standing duration and is unable to work." It is significant that neither his treating doctor nor the Hunts Point Center's clinical statement asserts that plaintiff either was permanently disabled or lacked residual functional capacity to engage in substantial

7. In addition, the Council noted that the report was signed by an individual whose signature is illegible. There is no indication that the individual who signed and sent the report was in fact a doctor, or that he had ever performed any examination of the plaintiff.

8. *Kaminski v. Califano*, 465 F.Supp. 367, 370 (S.D.N.Y.1979), aff'd 614 F.2d 1288 (2d Cir. 1979); *Deyo v. Weinberger*, 406 F.Supp. 968, 973 (S.D.N.Y.1975).

9. 20 C.F.R. § 404.1501(c) (1974).

10. *Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir. 1975); *Kaminski v. Califano*, 465 F.Supp. 367, 370 (S.D.N.Y.1979), aff'd 614 F.2d 1288 (2d Cir. 1979); *Deyo v. Weinberger*, 406 F.Supp. 968, 974 (S.D.N.Y.1975).

gainful occupation. And even if their statements were interpreted to mean that plaintiff was unable to engage in any substantial gainful occupation, they are not determinative of the issues; they were subject to appraisal by the A.L.J. based upon the entire record. Their statements which at no point suggested the duration of the inability to work were made in conclusory terms and without setting forth the facts and reasons upon which they were based; they were not supported by specific and clinical findings. In contrast, the doctors who examined plaintiff following the filing of his claim expressed their views as to his physical and mental condition in clear and precise terms based upon clinical findings.

Based upon the totality of the evidence the A.L.J. found that plaintiff was not prevented from engaging in substantial gainful occupation by reason of the pain and other symptoms; and that he had the residual functional capacity to perform his past work; that accordingly he was not "disabled" as defined in the statute. The Court concludes that the A.L.J.'s determination is reasonable and supported by substantial evidence and that the Secretary's determination based thereon must be upheld. Accordingly, the motion to dismiss the complaint is granted.