Robert LEFTENANT, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of
Health and Human Services,
Defendant.

No. 81 Civ. 6523.

United States District Court,
S. D. New York.

July 23, 1982.

Robert Leftenant, pro se.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, for defendant; Jane E. Bloom, Asst. U. S. Atty., Annette H. Blum, Acting Regional Atty., Region II, Michael Norrigian, Assistant Regional Atty., Dept. of Health, and Human Services, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, appearing pro se,[1] commenced this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act[2] to review a final determination of the defendant Secretary based upon a finding by an administrative law judge ("ALJ") after a hearing that plaintiff's medical condition was not so severe as to disable him from engaging in substantial gainful employment on a sustained basis, as defined in the Act, and thus he was not entitled to receive disability insurance benefits and supplementary insurance income.[3]

■ The Secretary moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings dismissing the complaint. The Secretary's determination must be upheld if it is supported by substantial evidence on the record as a whole—that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[4]

■ In an evaluation of disability, the following factors are to be considered: (1) objective medical facts; (2) diagnoses or medical opinion based on such facts; (3) subjective evidence of pain and disability testified to by plaintiff; and (4) his educational background, age and work experience.[5] Tested by the appropriate standard and after a word-by-word reading and a "searching investigation" of the entire record,[6] including the various exhibits before the ALJ, this Court does not have a settled conviction that his finding, affirmed upon appeal by the Appeals Council, is supported by substantial evidence on the record as a whole.

### Personal and Employment History

Plaintiff is 41 years of age, married, and the father of two children, ages 2 and 4.

1. At the administrative hearing he was represented by an attorney.

2. 42 U.S.C. §§ 405(g), 1383(c)(3).

3. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(A). The definition of "disability" is the same for insurance benefits and supplementary insurance income and the applicable case law is substantially the same for both. See Rivera v. Harris, 623 F.2d 212, 216 n.4 (2d Cir. 1980); Levya v. Harris, 514 F.Supp. 1313, 1315 n.1 (S.D.N.Y.1981); Fields v. Secretary of HEW, 444 F.Supp. 1003, 1004 n.3 (S.D.N.Y. 1977).

4. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 82 L.Ed. 126 (1938)).

5. Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980); Singletary v. Secretary of HEW, 623 F.2d 217, 218 (2d Cir. 1980); Marcus v. Califano, 615 F.2d 23, 26 n.2 (2d Cir. 1979); Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

6. Gold v. Secretary of HEW, 463 F.2d 38, 43 (2d Cir. 1972) (quoting Miracle v. Celebrezze, 351 F.2d 361, 382–83 (6th Cir. 1965)).

He attended high school for one year. Until he was in an automobile accident in August 1978, plaintiff had been regularly employed as a driver of tractor trailer trucks and an unloader that required him to lift heavy freight weighing 65, 85 and as much as 100 lbs. He was not hospitalized immediately after the accident, but two days later he went to the emergency room of a hospital where x-rays were taken and medication was given to him. He was treated by a private physician, Dr. Lorenzo Acea, Jr. The doctor advised him against lifting or any strenuous activities. Dr. Sheldon, a radiologist, reported to Dr. Acea several days after the accident that there was no x-ray evidence of fracture at that time. He recommended further x-ray studies in three months to rule out the possibility of development of traumatic arthritis.

The plaintiff testified that since the accident he has had constant pain in his lower back that prevented him from bending, lifting, carrying or sitting comfortably for long periods, activities which were required in connection with his work; that he was unable to work because of the pain. However, he returned to his job a year after the accident, in about the middle of November 1979, and continued until February 13, 1980, when he stopped because of the pain in his lower back; it was so severe that at the end of the day's work it took him two hours to get to the subway and his home. The plaintiff described his pain as excruciating all the way across the back and that the only time he does not experience pain is when arched on his bed with pillows below his back. He also testified that heat and massage treatment afforded only temporary relief for at most about 48 hours; that after sitting 20 or 25 minutes he feels such discomfort and pain that he has to stand, but that he cannot stand more than 10 minutes without discomfort; that for exercise he. walks around the block, but he cannot walk too far because of the pain; that when he walks up and down steps his legs and back hurt.

His wife works and cleans the apartment when she gets home. Since he stopped working he remains at home, tends the household, and takes care of their two children. His wife shops but he can carry a bag of groceries if it is not too heavy; he can lift a 5 lb. shopping bag; he does not push a shopping cart; that when he attempted these activities it resulted in extreme pain that forced him to see a doctor for relief. He prepares and cooks the meals for the family, which is not strenuous.

Plaintiff further testified that he has not returned to his previous employment because he cannot lift the way he used to and that the pain is unbearable; that after his last employment in February 1980 he tried to work at plumbing but quit after three days because the pain was so bad; that he could not work in any job at which he had to sit or stand for eight hours. In his application for benefits he stated he can travel to visit; that he is able to drive, but takes mass transit and cannot walk too far. Since January 1979 he has worn a back brace and since June 1980 he uses a cane.

*Medical History*

The record in addition to plaintiff's testimony includes certificates by doctors who treated or examined him and the report of a doctor designated by the Social Security Administration who also examined him. These reports are considered in detail since plaintiff in seeking a reversal of the disallowance of his claim alleges that "the ALJ disregarded the . . . reports of [his] treating physicians and gave undue weight to the report of a social security doctor which was based on an 'examination' of less than 5 minutes duration." [7]

Dr. Acea has treated plaintiff two or three times a week since the date of the accident, during a period of almost three years. Treatments consist of heat and massage applications twice a week, a muscle relaxant injected intravenously once a month, and drugs which are prescribed to relieve the pain. He also directs plaintiff's exercise activities. Immediately following the accident, Dr. Acea diagnosed plaintiff's

---

7. Complaint ¶ 8.

condition as headaches and dizziness; strained muscles of back, lumbar region, flexion and extension painful. Dr. Acea then (September 25, 1978) was of the view that plaintiff was "unable to work from 8/14/78 [the date of the accident] and [is] still unable to work." [8] A further report dated October 11, 1978 was of similar purport and again stated that plaintiff was still unable to work. On June 12, 1980 Dr. Acea issued another certificate in which he added to his prior diagnosis, "Patient is unable to bend his back [and] also unable to do any heavy lifting." An x-ray of the cervical spine revealed the loss of cervical lordosis indicating injury to cervical soft tissues. The doctor concluded "[p]atient is totally disable[d] to work." [9] This latter certificate was issued three months after plaintiff had given up work in February 1980 as he testified because of constant pain in his lower back. Dr. Acea's latest report is dated February 23, 1981, less than three months before the hearing before the ALJ. The diagnosis is in accord with his prior reports and concludes "patient is unable to do any heavy lifting and [is] also unable to walk long distance, or stand long time. [Plaintiff] have [sic] about 15% disability of his back. He is unable to work." [10]

In an undated report Dr. Marcos A. Cabral stated that plaintiff had been under his care since March 10, 1981; that he was receiving medication and physiotherapy twice a week; that plaintiff wears a lumbosacral support, is "unable to walk any significant distances, do any lifting, prolonged standing, pushing or pulling" and that "[h]e is unfit for work." [11]

Dr. Herbert G. Cohen, an orthopedic surgeon to whom plaintiff was referred by Dr. Acea, examined him on August 23, 1978, about ten days after plaintiff met with his accident. His diagnosis was post-concussion syndrome and traumatic myositis of cervical area, left shoulder and dorsolumbar area. He recommended a back support and further therapy. Dr. Cohen last examined plaintiff on April 11, 1981, about a month before the administrative hearing. The history reflects that plaintiff was still being treated by Dr. Acea once a week, was receiving heat treatment and physiotherapy and I.V. when the pain was bad. Dr. Cohen noted that plaintiff was wearing a back support and that there was a mild erector spinal spasm, no atrophy or discoloration; that all flexion, extension as well as lateral motions of both his left and right back, were limited by 10 degrees and "accompanied by pain." [12]

Dr. Samuel K. Dutta, the doctor designated by the service and whose report plaintiff charges was given undue weight by the ALJ, examined plaintiff on November 13, 1980. His diagnostic impression was (1) low back strain; (2) obesity; (3) early osteoarthritis or degenerative changes, right shoulder. Dr. Dutta was of the view that in terms of functional capacity to work, plaintiff should be able to walk 10–12 blocks; sit for 4 or 5 hours; stand 2 or 3 hours and lift up to 50 pounds. To the foregoing medical history must be added the observations of the interviewer at the offices of the Social Security Agency upon the filing by the plaintiff of his application dated December 12, 1980, who noted that plaintiff "walks slowly and seats himself with difficulty apparently experiencing pain. [He] stood up during interview indicating discomfort after sitting for about 10 minutes." [13]

There were really two questions before the ALJ: (1) whether, in the light of plaintiff's subjective complaints and the medical testimony, he was suffering pain of such severity that he was disabled from engaging in his previous occupation and, if so disabled, (2) whether, considering his age, education and work experience, he was capable of engaging in any other gainful

8.  Record Exh. 24 at 110.

9.  *Id.* Exh. 26 at 112.

10.  *Id.* Exh. 27 at 113.

11.  *Id.* Exh. 28 at 114.

12.  *Id.* Exh. 29 at 116.

13.  *Id.* Exh. 11 at 86. *Cf. Aubeuf v. Schweiker,* 649 F.2d 107, 113 (2d Cir. 1981).

work which exists in the national economy.[14] The ALJ found that although the medical evidence established that plaintiff did experience some pain in his lower back, it was not of "such severity" as to support a finding of disability; consequently, he did not reach the second branch of inquiry.

Thus we turn to the finding that plaintiff's pain was "not constant, severe or incapacitating."[15] It is well settled "that subjective *pain* may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence."[16] So, too, the expert opinion of a treating physician as to the existence of the disability is binding on the factfinder unless contraindicated by substantial evidence.[17] It is recognized that the ALJ is not bound by medical reports or the statements of the claimant but may arrive at an independent judgment regarding the true extent of the alleged pain based upon the totality of all the evidence.[18] However, to overcome the force of a claimant's subjective complaint of pain and his treating doctor's opinion as to the existence of disability the counter evidence must be of a substantial nature.[19]

The rejection by the ALJ of plaintiff's subjective complaint of the severity and constancy of his pain and consequent inability to return to his job as well as the rejection of the opinions of treating doctors that he was unable or unfit to work appears to rest on two factors. One, the ALJ noted that although plaintiff testified he was unable to perform tasks requiring lifting, carrying and bending, nonetheless, he further testified that he cares for his two children 4 and 2 years of age and prepares the family meals during the day. The ALJ concluded "[t]hese conflecting [sic] statements reflect doubt upon the credibility of his testimony concerning his subjective complaints of pain."[20] It is difficult to accept this rationalization. One may properly question whether the preparation of cereal or boiling eggs for breakfast, perhaps preparing a sandwich for lunch or broiling some fish or meat for dinner or cooking vegetables for two adults and two children or caring for them during the day requires disbelief or rejection of plaintiff's testimony that he was unable, as formerly, to lift objects weighing up to 100 pounds or that his pain is of such severity that he cannot work an 8 hour day on a sustained basis or that he can neither sit nor stand without a change in position after short intervals. The ALJ's rejection of plaintiff's subjective complaint of pain suggests that he was a pretender or a malingerer. However, the record is clear that plaintiff had been regularly employed over a substantial number of years prior to the accident at physically demanding jobs. This record of regular work activity over such an extended period "justifies the inference that when he stopped working he did so for the reasons testified to."[21] The Court suggests that a reasonable mind cannot readily accept the ALJ's conclusion based on the assigned reason for rejection of plaintiff's credibility even if the ALJ had the benefit of demeanor testimony. This was not an instance

---

14. 42 U.S.C. § 423(d)(2)(A) provides that disability must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

15. Record, Decision of ALJ at 13.

16. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *see also Aubeuf v. Schweiker*, 649 F.2d 107, 111–12 (2d Cir. 1981).

17. *Eiden v. Secretary of HEW*, 616 F.2d 63, 64 (2d Cir. 1980); *McLaughlin v. Secretary of HEW*, 612 F.2d 701, 705 (2d Cir. 1980) (quoting *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978)).

18. *Hankerson v. Harris*, 636 F.2d 893, 896 & n.3 (2d Cir. 1980); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Reyes v. Harris*, 482 F.Supp. 638, 641 (S.D.N.Y.1979).

19. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

20. Record, Decision of ALJ at 13.

21. *Singletary v. Secretary of HEW*, 623 F.2d 217, 219 (2d Cir. 1980).

**994**

where in assessing plaintiff's credibility as to pain the ALJ relied upon his observation of plaintiff's ability to function.[22]

The other basis for finding that plaintiff had failed to sustain his burden of proof of disability was the ALJ's view that the reports of Doctors Acea and Cabral, plaintiff's two treating physicians who certified he was unfit for work, were conclusory, whereas Doctors Cohen and Dutta were more detailed in their content and findings. But a fair reading of the treating doctors' reports shows that they were at least, if not more, detailed than Dr. Dutta's, upon whose report the ALJ placed great emphasis. While Dr. Dutta, in terms of the functional capacity of plaintiff to work, opined that he should be able to walk 10–12 blocks, sit 4–5 hours, stand for 2–3 hours and was capable of lifting up to 50 lbs., he never disputed the treating doctors' opinions that plaintiff was unable to work. Moreover, Dr. Dutta did not state that plaintiff was able to resume his prior work or if he was not, what particular work he was capable of performing.[23] The ultimate question is the degree of pain suffered by plaintiff and whether it was of such intensity that it forced him to quit his usual job.

.What one human being may be able to tolerate as an uncomfortable but bearable burden may constitute for another human being a degree of pain so unbearable as to subject him to unrelenting misery of the worst sort.... [E]ven pain unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits.[24]

Dr. Dutta's "diagnostic impression"[25] of low back strain and early osteoarthritis or degenerative changes, right shoulder is not inconsistent with Dr. Acea's several diagnoses of "strain[ed] muscles of back interscapular region and lumbar region flexion and extension painful."[26] Upon this record it cannot be said that the treating doctors' opinions of the existence of disability has been "contradicted by substantial evidence to the contrary."[27] To the contrary, the totality of the evidence, lay and medical, would compel any fair minded person to conclude that plaintiff could not perform his regular work.[28]

Under all the circumstances, the doctors should have been questioned before the ALJ either to afford a further evaluation of the medical testimony or at the very least, plaintiff should have been afforded an opportunity to obtain a more detailed statement from his treating doctors.[29] The matter is remanded for further consideration consistent with the foregoing with the recommendation that it be assigned to another administrative law judge.[30] And if it be found that plaintiff is disabled then a further determination is to be made as to his residual functional capacity to engage in any other gainful work which exists in the national economy and with a specification of the nature of such alternative activity.[31]

So ordered.

**22.** Cf. Vega v. Harris, 636 F.2d 900, 904 (2d Cir. 1981).

**23.** See Parker v. Harris, 626 F.2d 225 (2d Cir. 1980).

**24.** Marcus v. Califano, 615 F.2d 23, 28 (2d Cir. 1979) (quoting Ber v. Celebrezze, 332 F.2d 293, 299 (2d Cir. 1964)).

**25.** Record Exh. 16 at 97.

**26.** E.g., id. Exh. 26 at 112.

**27.** Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

**28.** See Singletary v. Secretary of HEW, 623 F.2d 217, 219 (2d Cir. 1980).

**29.** Hankerson v. Harris, 636 F.2d 893, 896 (2d Cir. 1980); Dorman v. Harris, 633 F.2d 1035, 1040 (2d Cir. 1980); Singletary v. Secretary of HEW, 623 F.2d 217, 218 (2d Cir. 1980).

**30.** Campbell v. Secretary of Dep't of HHS, 665 F.2d 48, 51 (2d Cir. 1981); 20 C.F.R. §§ 404.-1501–1598.

**31.** Cf. Kolodnay v. Schweiker, 680 F.2d 878 (2d Cir. 1982).