**Carol McGUIRE, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83 Civ. 2800.**

United States District Court, S.D. New York.

July 9, 1984.

Binder & Binder, Hauppauge, N.Y., for plaintiff; Charles E. Binder, Hauppauge, N.Y., of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Sally Lord, Asst. U.S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Carol McGuire ("McGuire") brought this action pursuant to 42 U.S.C. § 405(g) (1982) to review the final determination of the Secretary of Health and Human Services ("Secretary") denying her Social Security disability benefits. The Secretary moves, and McGuire cross-moves, for judgment on the pleadings in accordance with Rule 12(c), Fed.R.Civ.P. There is no dispute that plaintiff was insured during the relevant period for provision of disability benefits.[1] The sole question on this appeal is whether the Secretary's determination that McGuire was not disabled within the meaning of 42 U.S.C. § 423(d) (1982) is supported by "substantial evidence."[2]

Plaintiff, who for seven years worked as a legal secretary, claims that since 1979 she has been afflicted with arthritis and lupus erythematosus ("L.E."). The latter, she claims, affects her skin and joints, and causes fatigue and chronic, at times severe, pain, precluding her return to work as a legal secretary, which entailed typing, filing papers, answering the telephone, and other duties. She has been treated for L.E. by two physicians, Dr. Chandra Menon, from 1979 through February 1980, and, from February 1980 through the present, by Dr. Richard Benda. In 1982 she also was treated by Dr. Thomas A. Cerillo, a podiatrist, for cysts in her feet, which he diagnosed as associated with L.E. McGuire has also been examined by two consultative physicians designated by the Social Security Administration, Drs. Murray Sherwin and Harry Jackson.

Following a hearing, McGuire's claim was rejected by the Administrative Law Judge ("ALJ") on the ground that she failed to meet the requirement under the Secretary's regulations that she have a "severe impairment," that is, "any impairment which significantly limits [claimant's] physical or mental ability to do basic work activities ...."[3] The ALJ noted that plain-

---

1. *See* 42 U.S.C. § 423(c)(1)(B) (1982).

2. *Id.* § 405(g).

3. 20 C.F.R. § 404.1520(c) (1983); Record at 13. The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (1983).

   The determination of whether a disability insurance claimant is "severely" impaired is the second in a five step sequence used by the Secretary to make an ultimate determination of disability, which our Court of Appeals has summarized as follows:

   > First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

   *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982) (per curiam), *quoted, Bluvband v. Heckler,* 730 F.2d 886, 891 (2d Cir.1984).

   Under the Secretary's regulations, L.E. is a "listed" impairment if it extends to claimant's "renal or cardiac or pulmonary or gastrointestinal or central nervous systems," 20 C.F.R. § 404.1501 App. 1, § 10.04 (1983). There was ample evidence in the administrative record to support a determination that McGuire was not so afflicted and McGuire on this series of motions does not contend she was entitled to a

tiff's condition was "under control" and that her prescription for Aristocort cortisone compound had been reduced from 48 milligrams to alternating doses of 16 and 32 milligrams "with improvement."[4] He also relied upon McGuire's testimony purportedly to the effect that "she can do a full range of activities, including housework, taking care of her child, playing ball games, driving (or taking public transportation)—activities which involve sitting, standing, grasping[,] and manipulation of the hands."[5]

In deciding McGuire was thus not disabled, the ALJ rejected not only the findings of McGuire's treating physician, Dr. Benda but also those of the Social Security Administration's consultative physician, Dr. Sherwin, who examined McGuire in June 1981. Dr. Benda had concluded in his most recent report, dated March 4, 1982, that McGuire "is unable to hold a steady job as she is unable to do anything with her hands and her stamina is very poor."[6] Dr. Sherwin found that in an eight-hour work day claimant could not walk for even two hours and could not repetitively use her hands for "grasping, pushing/pulling, or fine manipulation."[7] The ALJ rejected these findings on the ground that Dr. Benda's conclusion was not backed by "supporting objective clinical findings"[8] and that Dr. Sherwin's evaluation was "inconsistent with the medical findings" and not substantiated by an "objective medical report."[9]

The ALJ, relying on his assessment of McGuire's demeanor and the consistency of her testimony, also rejected what he characterized as McGuire's claim of "constant, severe[,] and debilitating pain." In this regard, the ALJ relied on Dr. Jackson's finding that when McGuire was examined on October 15, 1981, she appeared to be in only "mild distress."[10] The ALJ also relied on statements by plaintiff's podiatrist, Dr. Cerillo, which he construed as indicating that the pain associated with the cysts on McGuire's right foot could be "corrected by surgery."[11] Finally, the ALJ reiterated McGuire's testimony concerning her activities, noted above, as a basis for rejecting plaintiff's claim of disabling pain.[12]

On February 16, 1983, the Social Security Administration's Office of Hearings and Appeals denied McGuire's request that the decision of the ALJ be reversed. The ALJ's decision thus became the Secretary's final decision,[13] leading to the instant action.

## DISCUSSION

█ The Court's task on this motion is limited to reviewing the record to determine whether the Secretary's factual determination that McGuire did not suffer any "severe impairment"[14] is supported by substantial evidence.[15] "Substantial evidence is defined as ' "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' "[16] Before concluding that McGuire is not entitled to ben-

finding of per se disability on the basis of the regulations or that the regulations are invalid. *Cf. Keith v. Heckler*, 732 F.2d 1089, 1093 (2d Cir.1984) (challenge to severity regulation). The Court of Appeals for the Second Circuit has studiously avoided a ruling on the latter issue. *See id.* at 1094.

4. Record at 12.

5. *Id.*

6. *Id.* at 91.

7. *Id.* at 78.

8. *Id.* at 12.

9. *Id.*

10. *Id.; see id.* at 81.

11. *Id.* at 89. The ALJ erroneously refers to the podiatrist as "T.A. Calb." *Id.* at 12.

12. *Id.* at 13.

13. *Id.* at 2–3.

14. *See supra* note 3.

15. 42 U.S.C. § 405(g) (1982).

16. *Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *see Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984); *McBrayer v. Secretary of Health & Human Servs.*, 712 F.2d 795, 798 (2d Cir.1983).

efits, the Secretary is obligated to consider the record evidence of (1) objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant; and (4) the claimant's educational background, age, and work experience.[17] It is the Court's duty not only to determine whether this consideration has been made, but, more particularly, to review the Secretary's compliance with "well established" [18] principles governing the evaluation of the record evidence, especially that of expert medical opinions by treating physicians. As our Court of Appeals has recently noted:

> The ... cases [in this Circuit] establish a sequence, and in effect posit an analytical framework, which the ALJ should follow. Initially, the ALJ should see whether the treating physician has determined that the claimant is disabled. He should then examine the record for conflicting evidence. Upon finding conflicting evidence, he should compare the probative value of the treating physician's opinion with the probative value of the conflicting evidence.... It [i]s improper for the ALJ to ... requir[e] from the start that [claimant's treating physician's] expert opinion be accompanied by concrete and detailed clinical support.[19]

Recognizing that the scope of review of the Secretary's decision is narrow and limited, the Court is nevertheless persuaded by its own word-by-word reading of the administrative record that the decision of the ALJ, which stands as the Secretary's final decision in this case, was not rendered with due regard for the rules governing the consideration of expert medical opinions and the plaintiff's subjective evidence of pain and disability, and is not otherwise supported by substantial evidence.

■ The record evidence that McGuire's treating physician, Dr. Benda, had concluded McGuire was disabled is clear and unequivocal. In his March 4, 1982, report, Dr. Benda noted that McGuire suffered from "severe tiredness and lethargy" as well as "swelling and redness of the fingers and both hands with marked limitation of motion," and that, notwithstanding doses of 48 milligrams of Aristocort, four days per week, "her joint and skin manifestations [of systemic lupus erythematosus] are unchanged." [20] His conclusion, quoted in part above, reads as follows:

> The prognosis for recovery is guarded and this tends to be a chronic condition and requires constant monitoring of her physical status and blood chemistries. At this point in time [McGuire] is unable to hold a steady job as she is unable to do anything with her hands and her stamina is very poor. In addition she also has complaints of pains in her feet which she has seen a [p]odiatrist for in the past, and she is unable to stand for any prolonged lengths of time.
> I believe on the basis of the preceding that this patient is disabled and is unable to work at this time.[21]

Dr. Benda's conclusion and the ALJ's ultimate determination that "claimant does not have any impairment or impairments which significantly limit the ability to perform basic work-related functions" are irreconcilable; clearly, the ALJ rejected Dr. Benda's expert evaluation. The ALJ appeared to rely on four independent grounds to justify this action, but upon analysis none of the purported reasons is sufficient under applicable law, as applied to the administrative record before the ALJ.

---

**17.** *Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983); *Leftenant v. Schweiker,* 543 F.Supp. 989, 990 (S.D.N.Y.1982).

**18.** *Bluvband v. Heckler,* 730 F.2d 886, 892–93 (2d Cir.1984).

**19.** *Id.* at 893; *see id.* at 892–93 (citing *Donato v. Secretary of Health & Human Servs.,* 721 F.2d 414, 419 (2d Cir.1983); *Rivera v. Schweiker,* 717

F.2d 719, 723 (2d Cir.1983); *Eiden v. Secretary of Health, Educ. & Welfare,* 616 F.2d 63, 64 (2d Cir.1980); *Alvarado v. Califano,* 605 F.2d 34, 35 (2d Cir.1979); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir.1975)).

**20.** Record at 91.

**21.** *Id.*

The first proffered reason, and that which appears to have most influenced the ALJ, was the ALJ's observation that Dr. Benda "provided no supporting objective clinical findings" to back his conclusion of disability. This observation, in light of the record evidence, is questionable to say the least,[22] and, in any event, the ALJ's reliance on the absence of clinical evidence is directly contrary to the repeated admonition by our Court of Appeals that "there is no requirement that the [treating] physician's 'medical testimony "be supported by 'objective' clinical or laboratory findings." ' "[23] Indeed, the ALJ rejected not only the treating physician's conclusion of McGuire's disability on this improper basis, but also that of the Secretary's own consultative physician, Dr. Sherwin, to the effect that McGuire was completely unable to use her hands for repetitive actions, could not walk for a total of two hours, and could not sit or stand in excess of two hours, each work day.[24] The ALJ's remark, with respect to Dr. Sherwin's conclusion, that it was "inconsistent with the medical findings," is without any support

in the record. Indeed, it is unclear to what medical findings he referred.

The second basis upon which the ALJ appeared to rest his rejection of Dr. Benda's conclusion of disability is McGuire's testimony, which the ALJ interpreted as admitting she "can do a full range of activities, including housework, taking care of her child, playing ball games, driving (or taking public transportation)—activities which involve sitting, standing, grasping[,] and manipulation of the hands."[25] A fair reading of McGuire's testimony, however, does not reveal she made the admissions as expansively set forth by the ALJ. The ALJ's characterization of McGuire's various statements disregards significant portions of her testimony that negate any inference of her ability to perform work-related activities, and is not otherwise justified by any articulated reason. McGuire did testify that she drives to her doctor's appointments, walks her son to school, and does some housework and shopping, "[i]f I am up to it."[26] There was no testimony to the effect that she "play[ed] ball games"[27] and McGuire expressly doubted that she could ride public transportation if she could

22. Although the ALJ does not explain what he meant by "objective clinical findings," Dr. Benda's March 1982 report states that his diagnosis was based not only on McGuire's "swelling and redness of the fingers and both hands" and "typical butterfly rash ... as well as multiple areas of erythema," but also claimant's "abnormal blood serology," *id.* Blood tests performed in February 1980, the detailed results of which are reported in the record, *see id.* at 76, included an "antinuclear antibodies test," which is used to diagnose L.E. That test registered positive results.

23. *Bluvband v. Heckler,* 730 F.2d 886, 893 (2d Cir.1984) (quoting *Eiden v. Secretary of Health, Educ. & Welfare,* 616 F.2d 63, 65 (2d Cir.1980) (quoting *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir.1975))).

24. It should be noted as well that the ALJ apparently ignored Dr. Sherwin's affirmation in his report that his evaluation was "based upon history and [my] clinical examination, as well as any test results, and *not on the claimant's allegations.*" Record at 78 (emphasis in original). An omission of a medical expert's affirmation of facts favorable to the claimant "raise[s] serious questions about the ALJ's findings that appellant ... no longer [or does not] suffer from a

severe impairment." *Varela v. Secretary of Health & Human Servs.,* 711 F.2d 482, 284–85 (2d Cir.1983) (per curiam).

25. Record at 12. The importance of this characterization of McGuire's testimony to the ALJ's determination is evident by the fact that he mentioned no fewer than three times that McGuire admitted that she "plays ball." *See id.* at 10, 12, 13. McGuire's actual testimony was as follows:

A: I used to be very sports inclined. I would play ball. And very active. And Now I really you know I can't do it. That does bother me.
Q: What are the other types of things that *you can't do any more?*
A: That *I can't do any more[?]*
Q: Yes[.]
A: I can't hit the ball with the bat you know. It is hard to grip it really is. You know I will flare up or else I am sore. It is hard. And even to play ball with my son, it is hard. I have to stay away from sun .... I am allergic to the sun more or less.
Record at 32–33 (emphasis added).

26. Record at 30.

27. *See supra* note 25.

not get a seat.[28] She affirmed she could not walk more than five or six blocks at a stretch, could not do heavy lifting, could not type because of "lumps on my fingers," and was so fatigued after even light housework that she felt she had "put in forty hours."[29]

Moreover, even if the ALJ were correct in his assessment that McGuire "can do a full range of activities," there is no substantial evidence in the record that she can perform normally for more than a short period of time.[30] The question before the ALJ was whether McGuire was significantly lacking in "the abilities and aptitudes necessary to perform most jobs."[31] Her testimony does not supply evidence relevant to this issue such that a reasonable mind could accept it as adequate to support the ALJ's ultimate conclusion of non-disability. The evidence, in fact, points in the opposite direction.

The third apparent basis for the ALJ's refusal to credit Dr. Benda's evaluation is the lapse in time between Dr. Benda's March 4, 1982, report, and McGuire's hearing before the ALJ on August 9, 1982. McGuire testified that as of her hearing date she was taking alternate doses of 16 and 32 milligrams of Aristocort, four days per week, which, she asserted "controlled" her disease, as opposed to the 48 milligram doses mentioned in Dr. Benda's report.

The ALJ cryptically referred to this change of dose as coming about "with improvement." Whatever the ALJ's intention in making the statement, there is no substantial evidence that the reduction in dose was indicative of "improvement" in McGuire's condition between March and August 1982.[32] To the contrary, the only direct evidence of plaintiff's symptomology on August 9, 1982, plaintiff's testimony, indicated plaintiff's condition had not improved. The implication that McGuire exaggerated her symptoms is not justified, especially in light of adjustments, at other times, in her dosage of Aristocort required to minimize the negative side effects of the cortisone compound.[33] That McGuire's disease was "controlled" on her hearing date is not probative on the issue of disability. McGuire clearly explained that the fact that her disease was "controlled" signified only that her condition had not worsened. She contended her treatment would not cure her disorder. On these points the medical documentation uniformly supports her position.

Finally, insofar as the ALJ relied on a statement by McGuire's podiatrist that the cysts on her feet should be removed by surgery "if pain persists," his conclusion that McGuire did not suffer a severe impairment is not supported by substantial evidence.[34] Given the record evidence, sur-

**28.** Record at 28.

**29.** *Id.* at 28, 29, 30.

**30.** Findings of severe impairment are often consistent with the ability to perform normally for short periods. *See, e.g., Carroll v. Secretary of Health & Human Servs.,* 705 F.2d 638, 643 (2d Cir.1983) (claimant "sometimes reads, watches television, listens to the radio, rides buses and subways" and "sat still for the duration of the hearing and was in no evident pain or distress"); *Aubeuf v. Schweiker,* 649 F.2d 107, 113 (2d Cir. 1981) (claimant gets up, eats breakfast, listens to the radio, goes out in the yard, walks down the road, can drive a car with difficulty and pain, goes shopping and visiting with his wife); *Quinones v. Secretary of Health & Human Servs.,* 567 F.Supp. 188, 191 (E.D.N.Y.1983) (claimant "seemed to be in no difficulty during the 18 minute hearing and ... drove himself 1½ hours to the hearing"); *Leftenant v. Schweiker,* 543 F.Supp. 989, 991 (S.D.N.Y.1982) (claimant

"tends the household and takes care of ... two children"; can lift a "5-pound shopping bag"; "prepares and cooks the meals for the family"; "travel[s] to visit"; "is able to drive, but takes mass transit and cannot walk too far").

**31.** 20 C.F.R. § 404.1521(b) (1983).

**32.** McGuire denied that her condition had improved during her treatment with Dr. Benda. Record at 13.

**33.** *See id.* at 80. In his March 4, 1982, report, Dr. Benda noted that McGuire suffered "the side effects of fluid retention and weight gain," *id.* at 91, from the Aristocort.

**34.** The Secretary's regulations do not explicitly authorize an ALJ to consider the ease with which an impairment could be cured when determining whether that impairment is "severe." Rather, a separate rule, 20 C.F.R. § 404.1530(a)

gical removal of the cysts would not render McGuire's disease a "non-severe impairment," as defined by the Secretary's regulations.[35] Dr. Cerillo noted that even after surgery "recurrence [of the cysts is] frequent[.]" The cysts, moreover, are only a small portion of McGuire's medical problems. The podiatrist did not, nor would it have been proper for him to, prescribe an entire course of treatment for claimant's L.E. Indeed, Dr. Benda stated that, wholly aside from the pains in her feet, McGuire "is unable to hold a steady job as she is unable to do anything with *her hands* and *her stamina* is very poor."[36] McGuire's failure, up to the date of the hearing, while still under treatment by the podiatrist, to submit to surgery, does not by itself provide substantial evidence that she was not suffering a severe impairment and thus not disabled within the meaning of the Social Security Act.

◼ Although the record's failure to support a finding that there was substantial evidence contradicting Dr. Benda's conclusion that plaintiff was disabled is alone basis for reversal and remand,[37] it is important to note as well that the ALJ's rejection of McGuire's testimony of pain as not credible is also not supported by substantial evidence. In rejecting McGuire's claims, the ALJ asserted that she had been inconsistent in her statements concerning her pain. The ALJ thus noted that although "claimant testified in a straightforward,

credible manner of constant, severe and debilitating pain[,]" Dr. Jackson "noticed only a mild distress from pains in her hands and feet."[38] A review of McGuire's testimony fails to indicate that she ever testified to "constant, severe[,] and debilitating pain." She did testify to having "stiffness [in her joints] just about all the time,"[39] that recurring pain in her shoulder would prevent her from working at a job that required lifting,[40] that she experienced pain in her hands, wrists, and other joints "about three days a week,"[41] and that about three times a month she experienced "flareups" of severe pain, which "fe[lt] as though[ ] a bone [wa]s broken," and which required administration of codeine.[42] Dr. Jackson's finding, based on his single examination in October 1981—almost ten months before her administrative hearing—that McGuire was in only mild distress is not inconsistent with these symptoms. McGuire did not need to prove "constant, severe[,] and debilitating pain" to show her disability. Chronic and recurring pain traceable to a medical cause and significantly limiting a claimant's ability to perform basic work activities would qualify her as having a "severe" impairment for purposes of the regulations.[43] The record fails to indicate substantial evidence in support of the ALJ's implicit conclusion that McGuire's pain was not of this nature.

Moreover, the ALJ's rejection of McGuire's testimony is unsound for other

(1983), states that the Secretary will not award benefits unless the claimant "follow[s] treatment prescribed by [her] physician *if this treatment can restore [claimant's] ability to work"* (emphasis added).

**35.** *See* 20 C.F.R. § 404.1521(a) (1983).

**36.** Record at 91 (emphasis added).

**37.** McGuire's request for benefits, as the ALJ recognized, *see id.* at 12, is premised on claims of both physical impairment (e.g., physical limitations on movement and stamina), and disabling pain. The decisions in this circuit recognize such claims as independent grounds for disability benefits, *see Rivera v. Schweiker,* 717 F.2d 719, 724 (2d Cir.1983). A finding that McGuire did not suffer disabling pain would thus not necessarily preclude the award of bene-

fits. Dr. Benda's finding of disability was not based explicitly on McGuire's allegations of pain, *see* Record at 91–92, and an administrative finding that McGuire did not experience disabling pain would thus not amount to substantial evidence contradicting the treating physician's conclusion of disability.

**38.** Record at 12.

**39.** *Id.* at 23.

**40.** *Id.* at 30.

**41.** *Id.* at 35.

**42.** *Id.* at 38.

**43.** *See Rivera v. Schweiker,* 717 F.2d 719, 724 (2d Cir.1983); 20 C.F.R. § 404.1520(c) (1983).

reasons. The ALJ noted that in evaluating pain, among the factors to be considered was "expressions of pain during the hearing." [44] He then observed that McGuire "sat comfortably throughout the hearing[,] ... answered questions spontaneously and did not appear preoccupied with physical distress" and that she testified to what the ALJ referred to as "engag[ing] in all types of physical and mental activities"; he concluded, from the foregoing, that "her allegation concerning the severity of her pain is not credible." [45] This conclusion is a non sequitur. Plaintiff testified that at times her disorder was in remission and she was at times free of pain. The ALJ's emphasis on "expressions of pain during a hearing" would penalize claimants who are free of pain during the taking of testimony, and yet who are nevertheless legitimately disabled, and indeed may encourage the simulation of pain at administrative hearings.

The decision of the Secretary is accordingly reversed and remanded for further proceedings, consistent with the foregoing.

So ordered.

---

**44.** Record at 12.    **45.** *Id.* at 13.