**Abraham LEMBERGER, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 81 CV 3338 (ERN).**

United States District Court, E.D. New York.

Jan. 17, 1984.

Mark S. Probert, Scheine, Fusco & Brandenstein, New York City, for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by Laura R. Handman, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM ORDER

NEAHER, District Judge.

In this action brought pursuant to 42 U.S.C. § 405(g), plaintiff seeks review of a final decision of the Secretary of Health and Human Services (Secretary) denying his application for Social Security disability insurance benefits.

The administrative record reveals that plaintiff was 55 years old at the time of his hearing before an administrative law judge (ALJ) on November 24, 1980. Although married, he was separated from his wife and lives alone. Following his separation from military service at the end of World War II, he completed four years of engineering studies at night. For the next 26 years he was steadily employed as a mechanical engineer by General Instrument Corporation. In October 1976 he was terminated by that company due to lack of work. In October 1977 he obtained employment as a project engineer for Slater Electronics but was laid off in December because the company had overestimated its needs.

Prior to his loss of employment, plaintiff sought psychotherapy in 1975 because of marital and family problems. He was advised of the need for more intensive treatment but could not afford it after he lost employment. In December 1976 he was

examined by a Veterans Administration (VA) staff psychiatrist who diagnosed him as suffering from "severe" neurotic depression, and recommended that his need warranted fee-basis treatment paid for by VA, which was granted. Exh. 14. On July 26, 1979 he was awarded 100% disability compensation on the finding "that the severity of your service-connection condition(s), although not totally disabling, prevents you from following a substantially gainful occupation." Exh. 14.

From October 1977 to January 1980 plaintiff was treated twice weekly by Dr. Sheldon Gladstein, a psychiatrist, for a "disabling depression" which he diagnosed as a "Major Regressive Illness." Exh. 15. He found plaintiff "severely" restricted in daily activities, interests and ability to perform work requiring even minimal contact with others. According to Dr. Lewis D'Azzara, staff psychiatrist at the VA Hospital, plaintiff's condition was complicated by family problems and renewed coronary insufficiency. Exh. 14.

On December 28, 1979 plaintiff filed his application for disability insurance benefits following a severe attack of tachycardia. Exh. 1. Dr. Lloyd Fellowes, a specialist in internal medicine and cardiovascular diseases, reported on September 26, 1980 that plaintiff had been his patient since July 1976 for treatment of coronary artery disease, and that plaintiff had suffered a more prolonged attack of tachycardia on August 18, 1980. It was Dr. Fellowes' opinion that plaintiff was not medically able to work. Exh. 17.

On May 2, 1980, at the request of the State agency, plaintiff was examined by Dr. Jennie Mauceri, a board certified specialist in psychiatry and neurology, who diagnosed him as suffering from "depressive reaction of a rather severe degree." Exh. 18. She found his degree of daily activities and constriction of interests to range from moderate to severe, and placed his ability to meet production, quality and attendance standards in the same category. *Id.*

On August 19, 1980 plaintiff was admitted to the emergency room of North Shore University Hospital following a severe episode of atrial fibrillation. This was relieved by digitalis treatment and he was placed on daily digoxin medication. However, on December 6, 1980 he was back in the hospital for 5 days complaining of chest palpitations. This was relieved by increasing his digoxin medication. Exh. 27.

On December 18, 1980 plaintiff was examined by Dr. Herbert Waltzer, a psychiatrist, at the request of the State agency. Exh. 25. He found no evidence of psychosis or thought disorder and was of opinion that plaintiff's depressive reaction was in remission and that his anxiety about returning to work may stem from fear of losing the secondary gain of his VA pension. In Dr. Waltzer's view, plaintiff had virtually no reduction in residual functional capacity as a result of psychiatric impairment. Exh. 25.

On December 22, 1980, again at the request of the State agency, plaintiff was examined for cardiac purposes by Dr. Joel S. Arora. Exh. 26. He diagnosed plaintiff as suffering from (1) arteriosclerotic heart disease, angina pectoris, compensated congestive heart failure; (2) para-atrial fibrillation (PAT) which was under control at that time; and (3) psychiatric history of depression.

Following the ALJ's adverse decision, dated April 10, 1981, Dr. Gladstein, plaintiff's psychiatrist, submitted a further comprehensive report detailing the relationship between plaintiff's anxiety neurosis and his increasingly frequent episodes of atrial fibrillation in addition to his long-standing arteriosclerotic heart disease. This information, Exh. AC–1, was considered by the Secretary and is part of the administrative record.

The essential task of the Court on this review is to determine whether plaintiff has met his burden of establishing a disability which prevented him from working for a period of twelve months or more. The conclusion is inescapable that he has done so, and that the Secretary's determi-

nation to the contrary is not supported by substantial evidence. That determination was based substantially upon the report of a non-treating consultative psychiatrist, Dr. Herbert Waltzer, who it appears examined plaintiff for less than 15 minutes.

Repeatedly, the courts in this circuit have held that the expert opinion of a treating physician when supported by the objective medical record as to the existence of a disability is binding upon the factfinder unless contradicted by substantial evidence. *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983); *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 64 (2d Cir.1980); *Alvarado v. Califano,* 605 F.2d 34, 35 (2d Cir.1979); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 42 (2d Cir.1972); *Ghazibayat v. Schweiker,* 554 F.Supp. 1005, 1008 (S.D.N.Y.1983); *Ramirez v. Schweiker,* 554 F.Supp. 1022, 1024 (S.D.N.Y.1983). This is a rule of law. *McLaughlin v. Secretary of Health, Education and Welfare,* 612 F.2d 701, 704–05 (2d Cir.1980). "Where evidence has not been properly evaluated because of an erroneous view of the law ..., the determination of the Secretary will not be upheld." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979); *Chiappa v. Secretary of Health, Education and Welfare,* 497 F.Supp. 356, 359 (S.D.N.Y. 1980).

Here, even the Secretary's other consultative psychiatric expert found plaintiff's depressive reaction to be "of rather severe degree," limiting him severely in some respects. And plaintiff's treating physician in the cardiovascular field was of opinion that he was not medically able to work. Dr. Gladstein, plaintiff's long-time treating psychiatrist, was also of that opinion in light of complicating cardiovascular problems. As this Court has noted:

> "Moreover, once it is determined that an impairment exists, the opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claim-

ant only once, especially where he has treated the claimant over a substantial period of time."

*Selig v. Richardson,* 379 F.Supp. 594, 601 (E.D.N.Y.1974) (citations omitted). *Accord, Clifton v. Secretary of Health, Education and Welfare,* 505 F.Supp. 614, 616 (W.D.N.Y.1980).

Rather than evaluate the medical evidence of treating physicians, the ALJ here appears to have substituted his own opinion that plaintiff's attempts to re-educate himself renders the medical opinions incredible. Substantial evidence, however, means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "Hence, while the court will not substitute its judgment for that of the Secretary, neither will it act as a rubber stamp of administrative determinations." *Ghazibayat v. Schweiker,* supra, 554 F.Supp. at 1013; *Correa v. Secretary of Health and Human Services,* 501 F.Supp. 236, 237 (S.D.N.Y.1980).

No remand is required for the purpose of considering disability. Section 205(g) of the Act, which governs judicial review of disability determinations (and which is made applicable to SSI by section 1613(c)(3)), provides:

> "The court shall have the power to enter ... a judgment affirming, modifying, or reversing the decision of the Secretary, *with or without remanding the cause for a rehearing.*"

42 U.S.C. § 405(g) (emphasis added). *See* 42 U.S.C. § 1383(c)(3). The Second Circuit has "reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980). That is the case here.

Accordingly, the Secretary's decision is reversed and the case is remanded for computation of benefits.

SO ORDERED.