Tomie L. BOLLES

v.

Richard S. SCHWEIKER, Jr., Secretary of Health and Human Services.

Civ. A. No. 4–82–265–K.

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 19, 1984.

West Texas Legal Services by Nancy Taylor Lynn, Fort Worth, Tex., for plaintiff.

James A. Rolfe, U.S. Atty. by Anthony W. Vaughn, Asst. U.S. Atty., Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

BELEW, District Judge.

Plaintiff brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1976), for judicial review

of a final decision of the Secretary of Health and Human Services denying her claim for a widow's insurance benefits under Title II.

Plaintiff filed her application for widow's benefits on December 9, 1980. Plaintiff's application was denied administratively, both initially and on reconsideration, after a physician and a disability examiner evaluated the evidence and determined that Plaintiff was not disabled within the meaning of the Social Security Act.

Dissatisfied with those determinations, Plaintiff requested that her claim be considered de novo by an administrative law judge of the Social Security Administration. Plaintiff's request was granted, and on June 24, 1981, a full hearing was conducted, at which Plaintiff, her attorney and a witness appeared. The administrative law judge issued a decision on November 18, 1981, finding that Plaintiff was not disabled under the Social Security Act and denying her claim for widow's insurance benefits.

Plaintiff thereafter sought review of the decision before the Appeals Council. The Appeals Council approved the denial of social security benefits on April 13, 1982 and it thus became the final decision of the Secretary, of which Plaintiff now seeks judicial review.

Plaintiff was a 59 year-old woman at the time of the hearing, having been born on March 23, 1922. She was married to J.W. Elson Bolles and was not divorced from him at the time of his death on November 30, 1980, and has not remarried since his death. J.W. Bolles had a fully insured status at the time of his death, and the Plaintiff's statutory seven-year period during which she may establish possible disability will end on December 31, 1987.

The medical evidence of record reveals that the Plaintiff has been treated by Dr. Susan Blue, a neurologist, for thoracic outlet syndrome, and by Dr. Sheridan Gibler, a cardiologist, for her heart problems.

Dr. Blue stated that she has treated the Plaintiff since May of 1974, and that the Plaintiff has a history of angina, thoracic outlet syndrome, arm pain, and chronic gastritis with gastrointestinal hemorrhages (Tr. 128). Dr. Blue anticipated that these problems would prove to be permanent conditions and further stated that the Plaintiff intermittently required Cortisone or other steroids for control of pain (Tr. 128).

In Dr. Blue's Assessment of Residual Functional Capacity, she stated that the Plaintiff could sit, stand, and walk for no more than one hour a day; that the Plaintiff could occasionally lift up to ten pounds but never more than that; that the Plaintiff could not grasp, push, pull, or exercise fine manipulation with either hand; and, that the Plaintiff could not use either foot for repetitive movements as in operating foot controls (Tr. 129). The report also stated that the Plaintiff could occasionally bend and reach above shoulder level but could never squat, crawl, or climb and that the Plaintiff was mildly restricted as to activities involving exposure to dust, fumes, and gases as well as being totally restricted as to activities involving unprotected heights, moving machinery, exposure to marked changes in temperature and humidity, and driving automotive equipment (Tr. 129).

Dr. Blue found Plaintiff totally and permanently disabled due to her bilateral thoracic outlet syndrome (Tr. 124). In arriving at this conclusion, Dr. Blue relied on the persistent absence of the left triceps jerk, the diffused muscle spasm in cervical and scapular areas, posterior bulging of the intervertebral disc between C–5 and C–6; calcific bursitis and tenonitis (Tr. 156). Dr. Blue also relied on nerve condition studies which showed a velocity of 40.2 and 45.9 meters per second through the thoracic outlet in the right and left arms, respectively, with normal being in excess of 63 meters per second (Tr. 176). Dr. Blue found that Plaintiff's condition met or equalled the severity of the impairment listings of the Social Security Administration found at § 11.14, titled Peripheral Listings (Tr. 176).

On July 10, 1981, Dr. Gibler, another treating physician, stated that the Plaintiff

**54**

was diagnosed as having arteriosclerotic heart disease with angina pectoris. Dr. Gibler also stated that the thoracic outlet syndrome is a severe pinching of large nerves in the neck and "results in exructiating and almost constant pain in both shoulders and arms" (Tr. 127). Dr. Gibler's opinion was that the Plaintiff's physical condition was so severe that it was completely out of the question for Plaintiff to "engage in any form of gainful employment" (Tr. 127).

The only issue before the Court in this action is whether the final decision of the Secretary that Plaintiff is not disabled within the meaning of the Social Security Act and not, therefore, eligible for widow's insurance benefits is supported by substantial evidence.

■ Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. *Rivas v. Weinberger*, 475 F.2d 255, 257 (5th Cir.1972). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hemphill v. Weinberger*, 483 F.2d 1137, 1139 (5th Cir.1973) (quoting *Rivas v. Weinberger, supra* at 257). Moreover, substantial evidence "must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Id.* Thus, although substantial evidence is more than a scintilla, it can be less than a preponderance.

The burden of proof rests on the Plaintiff to establish her entitlement of disabled widow's benefits. *Cook v. Califano*, 569 F.2d 1328 (5th Cir.1978). Sections 202(e) and 223(d)(2)(B) of the Social Security Act establish a three pronged test for eligibility for disabled widow's insurance benefits. 42 U.S.C. §§ 402(e) and 423(d)(2)(B). To qualify for benefits as a disabled widow, a claimant must establish that she is at least 50 years of age but not 60, that she is the widow of a wage earner who died fully insured, and that she has a physical or mental impairment or impairments which, under the regulations promulgated by the

Secretary are deemed to be of such severity as to preclude an individual from engaging in any gainful activity. *Sullivan v. Weinberger*, 493 F.2d 855 (5th Cir.1974).

■ At the outset, it is important to note the difference between the statutory disability standard for Title II benefits and that for disabled widow's benefits. Under 42 U.S.C. § 423(d)(2)(A), a wage earner is considered disabled if her impairment precludes her from engaging in any *substantial* gainful activity. Under section 423(d)(2)(B), however, a widow applying for benefits on the basis of her deceased spouse's record as a wage earner must show that she suffers from an impairment deemed by the Secretary to preclude her engaging in *any* gainful activity. Moreover, in assessing a wage earner's ability to work, the Secretary must consider the claimant's age, education, and work experience. On the other hand, a widow's claim of disability is judged solely by medical criteria. *Sullivan v. Weinberger, supra; Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir.1975).

The Secretary acknowledges that Plaintiff met the first two requirements for eligibility. Thus, the issue in front of this Court narrows as to whether the Secretary's decision that Plaintiff had no impairment or impairments which, under the regulations promulgated by the Secretary, are deemed to be of such severity as to preclude an individual from engaging in any gainful activity, was based on substantial evidence.

■ Although the Plaintiff bears the heavy burden of establishing the existence of a disability within the meaning of the Act, and this Court will rarely overturn the decision of the Secretary, "[n]evertheless, this Court is obligated to scrutinize the record in its entirety to determine the reasonableness of the Secretary's decision." *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir.1979) [citing *Davis v. Califano*, 599 F.2d 1324 (5th Cir.1979)]. In so doing, the Court must give great weight to the findings of Plaintiff's treating physicians. *Al-*

*len v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Vitek v. Finch*, 438 F.2d 1157, 1160 (4th Cir.1971). Evidence of non-examining physicians deserves comparatively less consideration. *Woodward v. Schweiker*, 668 F.2d 370 (8th Cir.1981).

In the case at bar, both treating physicians unequivocally found that Plaintiff's pain was disabling and Plaintiff's testimony to that effect was uncontradicted. The administrative law judge's finding of no disabling pain is supported only by his personal observations at the time of the hearing (Tr. 13). In the Fifth Circuit, exclusive reliance on such observations has been pejoratively characterized as "sit and squirm" jurisdiction and is insufficient in and of itself to support a finding of no disabling pain. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.1982). This is particularly true in the case at bar because of the strong evidence contradicting the administrative law judge's personal observations.

■ The record shows that various courses of treatment have been considered for the Plaintiff and ruled out, and the treatments eventually used did not provide sufficient relief from pain, as demonstrated from a review of Dr. Blue's and Dr. Gibler's treatment notes and reports.

Furthermore, the findings of pain by the Plaintiff's treating physicians are adequately supported by the objective medical findings, and are not controverted by the findings of the physician who examined the Plaintiff at the Secretary's request. In fact, that doctor, G.J. Phillips, M.D., found that it was unlikely that any available course of treatment would sufficiently control Plaintiff's pain (Tr. 92).

Although he made no explicit findings on the matter, the administrative law judge apparently did not consider the findings of Plaintiff's physicians of seven and eight years that Plaintiff suffered from disabling pain and weakness. He also apparently discounted Plaintiff's own testimony at the hearing that she has chronic, severe pain that disables her from doing even the tasks necessary to her personal care. In light of the strong evidence favorable to the Plain-

tiff presented by the Plaintiff's treating physicians and by the Plaintiff's own sworn testimony, it was incumbent upon the judge to make a finding that this evidence was not believable. *Scharlow v. Schweiker*, 655 F.2d 645 (5th Cir.1981). He made no such finding. Instead, he simply concluded that Plaintiff did not suffer the type and degree of pain as to meet the listings of impairments (Tr. 12). This conclusion was not only insufficiently predicated, but was not based on substantial evidence.

■ Additionally, the Appeals Council found it necessary to have "loss of pulses on hyperabduction or evidence of vascular compression in the extremities such as necrosis or Raynaud's phenomena or other evidence of neurological impairment of a significant degree," in order to find disability under the listings and the non-examining physician who recommended denial of Plaintiff's claim wanted evidence of severe weight loss. In fact, Plaintiff did have objective medical findings to support her complaints of pain and even had evidence of the substantial weight loss desired by the non-examining physician (Tr. 145). The point is, however, that although the existence of pain does not automatically support an assertion of disability, pain alone can be disabling even where its existence is unsupported by objective medical evidence. *Prewitt v. Gardner*, 389 F.2d 993 (5th Cir. 1968); *Hayes v. Celebrezze*, 311 F.2d 648, 651–52 (5th Cir.1963). Thus, the administrative law judge and the Appeals Council both relied on erroneous standards in determining whether Plaintiff was disabled by pain.

In the instant case, the test of whether or not Plaintiff meets the listings depends on the degree of interference, because of pain or otherwise, her condition has on her use of her fingers, hands, and arms, 20 C.F.R. § 404, Subpart P, Appendix 1, §§ 11.00 C, 11.04 and 11.14. The only reports relied on by the administrative law judge to support his decision that Plaintiff's use of her fingers, hands and arms was such that she was not disabled within the meaning of the Act, are those of *non-*

*examining* physicians who did not consider the nerve condition studies. (Tr. 46 and 51) These reports do not rise to the level of substantial evidence when the record is considered as a whole. The substantial evidence, including the explicit findings of Dr. Blue (Tr. 176) and Dr. Gibler (Tr. 127), Plaintiff's treating physicians, shows that Plaintiff is severely impaired to the extent required by the pertinent listing.

The Court, thus, concludes that there is no substantial evidence to support the Secretary's decision that Plaintiff could do sedentary work or that she did not meet the requirements of the impairment listing at § 11.14 of Appendix 1, Subpart P, 20 C.F.R. § 404. Instead, the substantial evidence shows that Plaintiff is severely impaired in the use of both arms, hands, and fingers, due to the pain and weakness resulting primarily from her thoracic outlet syndrome.

For the reasons stated above, the Court reverses the Secretary's decision and renders judgment in favor of the Plaintiff.