**Molder M. BELDEN, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**No. L 83–119.**

United States District Court, N.D. Indiana, Hammond Division.

May 7, 1984.

Donald K. Blair, Monticello, Ind., for plaintiff.

R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., Christina McKee, Asst. U.S. Atty., Fort Wayne, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This is an action for judicial review of a final decision of the defendant Secretary of Health and Human Services determining that plaintiff is no longer entitled to a period of disability under Section 216(i) of the Social Security Act or disability insurance benefits, as provided by Section 223 of the Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423.

Plaintiff filed an application for a period of disability and disability insurance benefits on September 26, 1969 (Tr. 99–102), alleging that he became unable to work on November 11, 1968, at age 27.[1] A period of disability was established for plaintiff, but plaintiff was notified that recent evidence made it appear that he was no longer under a disability as of December 1981 (Tr. 18, 170). He received a Social Security Termination notice dated March 26, 1982, advising him that he was last entitled to benefits in February 1982 (Tr. 18, 111, 113). Upon reconsideration, that determination was affirmed (Tr. 167), after the Indiana State Agency, upon evaluation of the evi-

---

**1.** Plaintiff applied for Supplemental Security Income (SSI) on May 5, 1982. Copies of his application for SSI and the SSI notice are not available (Tr. 1). In his decision the ALJ determined that plaintiff is not eligible for SSI (Tr. 19).

dence by a physician and a disability examiner, had found that plaintiff was no longer under a disability. The Administrative Law Judge (ALJ), before whom plaintiff and his attorney appeared considered the case *de novo*, and on June 23, 1983, found that plaintiff was no longer under a disability (Tr. 9–19). The ALJ's decision became the final decision of the Secretary of Health and Human Services when the Appeals Council approved that decision on August 29, 1983 (Tr. 5). This case was filed October 23, 1983. The defendant Secretary filed for summary judgment on March 19, 1984 and the plaintiff did so on April 30, 1984.

This subject program of terminating disability benefits is presently a matter of great concern both inside the Federal Judiciary and out. See *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir.1984). The Secretary has also publicly announced the cessation of the program excepting cases, such as this one, still pending in the United States Courts.

To qualify for a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, an individual must meet the insured status requirements of these Sections, be under age 65, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423.

In order to qualify for SSI benefits on the basis of disability under Section 1602 of the Act, 42 U.S.C. § 1381a, an individual must file an application for SSI benefits based on disability, and he must be an "eligible individual" as defined in the Act.

With respect to the present action, the term "eligible individual" is defined in Section 1611(a) of the Act, 42 U.S.C. § 1382(a), as follows:

(1) Each ... disabled individual who does not have an eligible spouse and—

(A) whose income, other than income excluded pursuant to Section 1612(b), is at a rate of not more than $1,752 (or if greater, the amount determined under Section 1617) for the calendar year 1974 or any calendar year thereafter, and

(B) whose resources, other than resources excluded pursuant to Section 1613(a), are not more than (i) in case such individual has a spouse with whom he is living, $2,250, or (ii) in case such individual has no spouse with whom he is living, $1,500,

shall be an eligible individual for purposes of this title.

The term "disabled individual" as used in Section 1611(a) of the Act is defined in Section 1614(a), 42 U.S.C. § 1382c(a), as follows

(1) For purposes of this title, the term "... disabled individual" means an individual who—

(A) ... is disabled (as determined under paragraph (3)), and

(B) is a resident of the United States, and is either (i) a citizen or (ii) an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law (including any alien who is lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act).

\* \* \* \* \* \*

(3)(A) An individual shall be considered to be disabled for purposes of this title if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of

whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(C) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

The only issue before the court in this action is whether the final decision of the Secretary is supported by substantial evidence.

The basic findings of the ALJ are found at Tr. 18 as follows:

1. The claimant was found to be disabled within the meaning of the Social Security Act beginning November 11, 1969, and he has not engaged in substantial gainful activity since that date.

2. The medical evidence establishes that the claimant has a lower back condition, post multiple discectomies and spinal fusions, but that at least since December 1981, he has not had an impairment of combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's subjective complaints of disabling pain and functional limitations are disproportionate to the objective findings in the medical record, manipulative on the claimant's part, and not fully credible.

4. Although the claimant does experience some pain and functional limitations as a result of his condition, as of December 1981, he had regained the functional capacity to perform work which did not require prolonged standing or walking or lifting of over 10 pounds (20 CFR 404.1545).

5. The claimant is unable to perform his past relevant unskilled, medium to heavy work in construction and factory labor.

6. Beginning December 1981, the claimant had the residual functional capacity to perform the full range of sedentary work (20 CFR 404.-1567).

7. The claimant has been an younger individual for purposes of Social Security Disability Evaluation at all times here pertinent (20 CFR 404.-1563).

8. The claimant has a marginal sixth grade education, can read only a very little, and cannot write.

9. The claimant has a history of unskilled work activities.

10. Section 404.1569 of Regulations No. 4 and Rules 201.23 and 201.24 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, he is not longer disabled.

11. The claimant's disability ceased on December 8, 1981 (20 CFR 404.-1520(f)).

Establishment of a disability which would entitle plaintiff to benefits under the Social Security Act is a two-step process. First, there must be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months; and second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. 42 U.S.C. § 423(d)(1)(A), (2)(A); 42 U.S.C. § 1382c(a)(3)(A), (B); *Lieberman v. Califano*, 592 F.2d 986 (7th Cir.1979).

It is settled law that the burden of proof rests upon the plaintiff to establish entitle-

632

ment to disability benefits under the Social Security Act. *Johnson v. Weinberger*, 525 F.2d 403 (7th Cir.1975).

Plaintiff, who was born on November 13, 1941, completed the sixth grade and has worked as a general laborer (Tr. 99, 45, 47–52, 58). He alleges disability as of November 11, 1968 due to "back injury" (Tr. 99). Plaintiff received disability benefits until February 1982, the second month from the month in which the Administration determined his disability had ceased, i.e., December 1981. Plaintiff is unable to return to his former work.

On November 11, 1968, plaintiff fell about four feet at work and injured the cervical dorsal area of his back (Tr. 174). On February 5, 1969, E.T. Stahl, M.D., described plaintiff as a "healthy appearing man." Plaintiff's head, neck, cardio-vascular system, abdomen, and lower extremities were normal. Plaintiff complained of indefinite numbness in his arms (Tr. 175). On March 13, 1969, plaintiff underwent a disc removal and fusion (Tr. 179).

Dr. Stahl examined plaintiff on April 24, 1972. Plaintiff's head, neck, arms, chest, heart, and abdomen were normal. His legs functioned normally. He had acute tenderness on pressure and to motion over L4 (Tr. 188). Plaintiff underwent a spinal fusion at L3–4 on April 24, 1972 (Tr. 190–191).

Jaap J. Lind, M.D., examined plaintiff on November 6, 1981. He suggested no further treatment (Tr. 192).

Franklin Mathews, M.D., a neurologist, very briefly examined plaintiff on June 10, 1982. Plaintiff complained of headaches, sleep disturbance, and pain in his arms, legs, and back. Plaintiff told Dr. Mathews that he reinjured his back in a 1974 truck accident. Dr. Mathews described plaintiff as anxious, nervous, depressed, dull, apathetic, theatrical, and tearful.

On January 22, 1983, Gerald Gruen, Ph.D., a psychologist, examined plaintiff. Plaintiff had a full scale IQ of 85, was in good contact with reality, did not grossly distort things conceptually or perceptually, and had no phychoses or serious emotional

problems. He was anxious and depressed. Dr. Gruen reported that plaintiff "may well use his physical problems at times to manipulate others." Plaintiff's academic skills were limited (Tr. 209–211).

On April 11, 1983, Danny C. Bao, M.D., diagnosed lumbosacral radiculopathy (Tr. 265). On April 12, plaintiff had an EEG, which was normal (Tr. 278). An AER (auditory evoked response) was normal (Tr. 281). X-rays of plaintiff's spine showed a normal cervical spine, but narrowing of the L4–L5 disc space (Tr. 282).

On August 9, 1982, D.F. Shook, M.D., removed a rectal polyp from plaintiff (Tr. 235). A rectal biopsy revealed no pathologic diagnosis (Tr. 236).

On December 4, 1981, A.C. Estes, M.D., a non-examining physician, stated that plaintiff could occasionally stoop, climb stairs, and operate foot controls, and frequently lift 10–20 pounds with both arms. Plaintiff was able to walk for six hours, stand for two hours, and sit for eight hours during an eight-hour day. He was able to reach above shoulder level and use his hands for gross and fine manipulation, pushing, and pulling. He was not restricted in his ability to engage in activities involving machinery, marked temperature changes, driving automotive equipment, exposure to fumes, hearing ordinary conversation, and fine work (Tr. 193).

Dr. Gruen, who is not a medical doctor, opined on January 22, 1983: "Mr. Belden would have great difficulty finding employment. He cannot do physical work, or even sit or stand for a prolonged period of time" (Tr. 211).

On May 2, 1983, Dr. Bao felt that plaintiff had been disabled since 1980 (Tr. 280).

An examination of recent slip opinions from our Court of Appeals clearly demonstrates the care with which an ALJ must develop the record in the procedural context of this case. In *Strittmatter v. Schweiker*, 729 F.2d 507 (7th Cir.1984), Judge Posner speaking for that court, said:

But from the administrative law judge's excessively brief discussion we

cannot determine whether he did ascertain the demands of Mrs. Strittmatter's former work and compare them with her present physical capacity. He described that work as "sedentary," and this is literally true since Mrs. Strittmatter did her work sitting down. But sedentary work is not homogeneous with respect to strenuousness. The physical demands placed on a receptionist or a ticket seller are not the same as those placed on a factory worker operating machinery. Although it is possible that some of her factory jobs were as light as sedentary work can be, we are not told what a "spotter," "divider," or "tester," does, and the other jobs listed by the administrative law judge appear to be physically more demanding than sedentary work of a clerical nature. The administrative law judge was required to determine the physical demands of the particular type of sedentary work that this claimant had done and then compare those demands to her present capabilities. *Epps v. Harris,* 624 F.2d 1267, 1274 (5th Cir.1980). He may have done this; but we cannot tell that from his opinion. Nor is the administrative law judge's finding that Mrs. Strittmatter is physically capable of some sedentary work a permissible alternative ground for his conclusion that she is not disabled. In some circumstances, a person who is physically able to do sedentary work, but not the work he once did, will be deemed disabled. See 20 C.F.R. App. 2, tab. 1.

In *Zblewski v. Schweiker,* 732 F.2d 75 (No. 82–1836, 7th Cir. April 8, 1984), Judge Flaum stated:

While we must defer to the credibility determinations of the fact-finder, we must be sure that the ALJ has indeed made a credibility determination. This conclusion follows from the definition of "substantial evidence" set forth in *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474 [71 S.Ct. 456, 95 L.Ed. 456] (1951), in which the Supreme Court vacated a decision enforcing a Board order, finding it insufficient that the evidence supporting the Board's order was sub-

stantial when considered in isolation. The Court held that the evidence supporting the agency's decision must be substantial "when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view." *Id.* at 488 [71 S.Ct. at 465]. While there may be strong grounds upon which the ALJ rejected claimant's evidence in this case, as the district judge presumed, we cannot say on the basis of the record that such a conclusion is self-evident. In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. It is more than merely "helpful" for the ALJ to articulate reasons (*e.g.,* lack of credibility) for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review. As the Third Circuit put it in *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981), when the ALJ fails to mention rejected evidence, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."

This court is not unmindful of the heavy and unique burden placed upon ALJs in Social Security Act cases. We emphasize that we do not require a written evaluation of every piece of testimony and evidence submitted. However, a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.

For a similar result by the same judge for the same court, *see Garfield v. Schweiker,* 732 F.2d 605 (No. 82–2643, 7th Cir. April 24, 1984). *Compare, Strunk v. Heckler,* 732 F.2d 1357 (No. 82–3081, 7th Cir. April 27, 1984). *See also, Tingling v. Secretary,* 575 F.Supp. 905 (S.D.N.Y.1983).

The ALJ put considerable stock in the opinion of two nontreating physicians, Dr. Franklin Mathews and Dr. A.C. Estes. It is beyond dispute that Dr. Mathews conducted a brief, 15 minute examination of

plaintiff on June 10, 1982 and Dr. Estes neither examined nor treated this plaintiff.

A review of the most recent authorities on this subject is most revealing. *Whitney v. Schweiker,* 695 F.2d 784 (7th Cir.1982), is authority for the proposition that the testimony of treating physicians, if found credible, is entitled to controlling weight. Also, compare *Carver v. Harris,* 634 F.2d 363 (7th Cir.1980), with *Cummins v. Schweiker,* 670 F.2d 81 (7th Cir.1982). For other recent authorities on the subject see *Van Huss v. Heckler,* 572 F.Supp. 160 (W.D.Va. 1983), and *Edwards v. Secretary,* 572 F.Supp. 1235 (E.D.N.Y.1983); *Ferraris v. Heckler,* 728 F.2d 582 (2d Cir.1984); *Narrol v. Heckler,* 727 F.2d 1303 (D.C.Cir. 1984); *Cress v. Heckler,* 579 F.Supp. 644 (E.D.Pa.1984); *Vance v. Heckler,* 579 F.Supp. 318 (N.D.Ill.1984); *Lemberger v. Heckler,* 579 F.Supp. 49 (E.D.N.Y.1984); *Bolles v. Schweiker,* 579 F.Supp. 52 (N.D. Tex.1984); *Tingling v. Secretary, supra.* There is no finding in this record that any of the treating physicians are not credible. Thus, that evidence should be considered in the light of the above authorities.

A very experienced district judge in this circuit has held that the opinion of a physician based upon medical reports of other physicians rather than on personal examination was not substantial evidence to support the denial of benefits. *Gudlis v. Califano,* 452 F.Supp. 401 (N.D.Ill.1978) (Will, J.).

The recorded comments of the ALJ in regard to a vocational expert, Mr. Miller, are relevant:

> After examining the medical evidence of record at the time of the hearing and listening to the testimony of the claimant, the vocational expert, Mr. Miller, testified. As noted previously, he testified that the claimant's prior work had been unskilled and medium to very heavy in terms of exertional capacity required. He was asked to assume that the claimant was born November 13, 1941 and had the education and work experience described above. For a series of hypothetical questions, he was then asked to as-

sume that the claimant's condition was as described by Dr. Mathews in his consultative examination (Exhibit 45); and that he had the capacity shown by Dr. Estes' estimates (Exhibit 42). With such limitations, it was the vocational expert's opinion that the claimant would not be capable of returning to his former work but that he would be capable to performing the 200 unskilled sedentary jobs of which the Secretary of Health and Human Services has taken official notice. He was also asked to assume that the claimant's condition was as described by Dr. Lempke in Exhibits 44 and 52; that his condition was as described by Dr. Lind in Exhibit 41; that his condition was as described by the claimant in a reconsideration disability report completed April 20, 1982; that his condition was as described in a disabled persons report completed by the claimant September 29, 1981; that the claimant's condition was described by Dr. Lempke after examining him January 24, 1983 (Exhibit 52); and that the claimant's condition was as he had described at the hearing. It was the vocational expert's opinion that, to each of those hypothetical situations, the claimant would be unable to perform his past relevant work and would be unable to perform any of the 200 unskilled sedentary occupations of which the Secretary of Health and Human Services has taken official notice.

It is most difficult to find a basis for the quoted findings in this part of the record.

The findings in regard to the plaintiff's credibility and subjective complaints of pain are neither specific nor necessarily helpful in a review of the record. The reasoning and result announced in *Zblewski* is particularly relevant here and compels far more specific findings on this subject.

█ It is correct that an ALJ has the obligation to observe the plaintiff to make the necessary credibility determinations. However, the ALJ may not substitute lay observations for expert medical evidence. This court and others have condemned the

so-called "sit and squirm" index. See *Lee v. Heckler*, 568 F.Supp. 456 (N.D.Ind.1983). See also, *Bolles v. Schweiker, supra; Lemberger v. Heckler, supra.*

It is beyond dispute here that plaintiff cannot engage in his former work. The sequential review under 20 C.F.R. 404.1520 is well and recently spelled out in *Stout v. Heckler*, 579 F.Supp. 237 (D.Idaho 1984). We do not have the issue here of the ability to return to former work as existed in *Strittmatter, supra.*

 When an ALJ rejects the testimony of a plaintiff or medical testimony proffered by a plaintiff, there is a considerable obligation to be specific. *See Garfield, supra.* There is also a burden to examine the whole record and not simply select bits and pieces and ignore substantial evidence to the contrary. *Vance v. Heckler, supra; Bolles v. Heckler, supra.* See also, *Daring v. Heckler*, 727 F.2d 64 (3d Cir.1984); *Smith v. Schweiker*, 728 F.2d 1158 (8th Cir.1984).

 The burden of proof as to the medical basis of a finding of disability remains with the claimant at all times. If the claimant, as here, makes a showing that he is unable to return to a customary occupation, then the Secretary has the burden of proving that claimant has the capacity to perform jobs that exist in the national economy. *Daring v. Heckler*, 727 F.2d at 68.

The finding that this plaintiff can do sedentary work finds doubtful support in this record. The comments of Judge Posner, in *Strittmatter, supra*, on the subject of sedentary work findings are most relevant here. In the same vein, see also *Ferraris v. Heckler, supra.*

 At the hearing in this case the ALJ propounded hypothetical questions to Costa N. Miller, the vocational expert employed by defendant. Where the ALJ uses a hypothetical question in examining a vocational expert to determine a social security disability claimant's capacity to do specific jobs, it is fundamental that the ALJ *relate with precision* the job capacity and opportunity to the physical and mental impairment of the particular claimant, *Daniels v. Mathews*, 567 F.2d 845 (8th Cir.1977); and that this is done if the vocational expert testifies that plaintiff can work in various sedentary occupations, such as a chassis assembler in the electronics industry, an estimator for the cost of sheet metal jobs for contractors, or a gate tender in heavy industry. *Roe v. Califano*, 433 F.Supp. 1157 (D.Md.1977).

 In this case, the ALJ failed to state plaintiff's capacity to do specific jobs in the hypothetical questions he propounded to the vocational expert, Costa N. Miller. His failure to include specific jobs in his hypothetical questions was. legal error.

For the foregoing reasons, this case is REVERSED and REMANDED to a different ALJ who may conduct a fresh hearing and enter fresh findings in accord with this decision. SO ORDERED.