William BUTTRON, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 84 Civ. 3627 (RWS).

United States District Court, S.D. New York.

May 30, 1985.

Meltzer & Fishman, New York City, for plaintiff; Stanley F. Meltzer, Michael T. Lamb, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Rosemarie E. Matera, Asst. U.S. Atty., New York City, of counsel.

## OPINION

SWEET, District Judge.

This is an action brought by plaintiff William Buttron ("Buttron") under section 205(g) of the Social Security Act, as amended (the "Act"), 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (the "Secretary"), which denied Buttron's application for federal disability insurance benefits. The Secretary has now moved pursuant to Fed.R.Civ.P. 12(c) for an order affirming the decision below. Buttron has cross-moved for judgment on the pleadings. For the following reasons the decision of the Secretary is vacated, and the case is remanded to the Secretary for further proceedings consistent with this opinion.

### Prior Proceedings

Buttron's first application for disability insurance benefits for the period beginning June 19, 1977 was denied on January 2, 1980 by decision of the Administrative Law Judge. The Appeals Council denied Buttron's request for review and the Administrative Law Judge's decision became the final decision of the Secretary. Buttron did not appeal that decision.

On April 8, 1983 Buttron filed an application for disability insurance benefits stating an inability to work since May 2, 1980 due to acute lumbosacral strain with degenerative disc disease, removal of a kidney due to malignancy, severe arthritis of the spine and loss of three toes on the right foot. His application was denied initially and on reconsideration, and Buttron subsequently requested a hearing to review his application. The hearing was held on February 2, 1984 before Administrative Law Judge Lloyd S. Greenridge (the "ALJ") who considered the case de novo. At the hearing Buttron amended his application to include a psychological condition as an additional basis of disability. On February 28, 1984 the ALJ found that Buttron was not under a disability, and the Appeals Council affirmed that determination on April 18, 1984. Buttron subsequently commenced this action to review the final decision of the Secretary.

Buttron met the insured status requirement of the Act for the purpose of entitlement to Title II benefits only through December 31, 1982.

### Facts

Buttron was born on April 13, 1935 and at the time of the hearing was forty-eight years of age. He has a high school diploma and attended one year of college. His relevant work background consists of employment as a truck driver from 1972 to 1977 following fifteen years of sporadic employment as a general construction day laborer. Prior to 1972 Buttron did not work steadily because of a severe drinking problem. Buttron testified that he is an arrested alcoholic, that he attends Alcoholics Anonymous' meetings regularly, and that he last drank on July 4, 1972. Buttron last worked on June 19, 1977 when he fell off a loading platform and injured his elbow.

The medical evidence of record may be summarized as follows. Dr. Jerome J. Moga examined Buttron on August 7, 1981. On that occasion, Buttron complained that he injured his back on June 21, 1977. Since that time he had responded slowly to intensive therapy and obtained some relief with acupuncture. Buttron indicated that he experiences lumbrosacral stiffness and pain after being up and about for more than two or three hours. Buttron reported that he requires two to three hours of extra bed rest each day. He informed Dr. Moga that he could engage in light physical activity on a limited and intermittent basis.

On examination, Dr. Moga noted no lumbrosacral tenderness. Straight leg raising tests were negative. No neurological changes were noted in the lower extremities and measurements of plaintiff's thigh and calf region were equal bilaterally. Dr. Moga noted a limitation of forward bending at the waist to 45 degrees. Dr. Moga concluded that Buttron was not capable of sustained physical activity on a regular basis but that intermittent periods of ambulation and sitting were possible.

A July 28, 1982 report of Westchester County Medical Center showed that Buttron was receiving trigger point stimulation treatment for myositis and arthritis of the low back, with no complications. X-rays of Buttron's lumbrosacral spine were taken by Dr. Albert Messina and Dr. Arie Liebeskind in October, 1982. The x-rays revealed mild narrowing at the L1–2 and L2–3 interspaces with minimal posterior displacement of the vertebral bodies. There was evidence of minimal anterior osteophyte formation. There was no evidence of spondylolysis. The impression was that these x-rays were consistent with degenerative arthritis, most marked in the upper lumbar spine. An x-ray of the hips revealed osteoarthritis of both hips.

On February 15, 1983, Buttron was admitted to Northern Westchester Hospital Center for investigation of painless hematuria (blood in the urine). An intravenous urography revealed a mass lesion of the right kidney. On February 23, 1983 Buttron underwent a right radical nephrectomy (excision of the right kidney). The pathology report revealed renal cell carcinoma involving but not penetrating through the renal capsule. There was no evidence of vascular invasion and an examination of Buttron's lymph nodes was negative. Buttron was discharged on March 8, 1983. His condition was improved.

Dr. Eugene L. Hirsch, a chiropractor, began treating Buttron on July 1, 1974 and saw him most recently on June 1, 1983. Dr. Hirsch noted that Buttron "[o]riginally began one to two visits per week; now, approximately once every month to three months based on symptomatic need." He indicated that, as a result of treatment "[Buttron] can move in any position, but does so guardedly." In describing Buttron's daily activities, Dr. Hirsch noted that "[Buttron] cannot do any heavy lifting or bending without pains in the low back." He stated that Buttron "is physically unable to perform any type of occupation that would require prolonged sitting, standing, or even the mildest lifting." Relying on the x-ray report of Dr. Messina and Dr. Liebeskind, Dr. Hirsch's impressions were degenerative arthritis, most marked in the upper lumbar spine and osteoarthritis of the hips bilaterally. He described Buttron as totally disabled and noted "[t]he complication of his malignancy in the right kidney has, in my opinion, also added to the condition of total disability."

Dr. Moga examined Buttron a second time on June 4, 1983. In a report to the Worker's Compensation Board, Dr. Moga indicated that Buttron had informed him that he required six extra hours of bed rest a day to decrease his low back pain. Dr. Moga noted tenderness of the lumbosacral area and positive straight leg raising at 70 degrees. There were no neurological changes. He described Buttron as totally disabled.

Dr. Robert Silva, Buttron's treating urologist, offered an assessment of Buttron's ability to do work-related physical activities on January 9, 1984. He reported that "urologically there are no physical restrictions."

Dr. Richard Silverman, a staff psychiatrist with Phelps Memorial Hospital Mental Health Center noted in a report to Buttron's representative dated January 19, 1984 that Buttron was referred to the Phelps Memorial Center in September 1983 for treatment of depressive symptoms. The diagnosis at that time was major depression with secondary diagnosis of alcoholism, resolved, and dependent personality disorder. Dr. Silverman felt that Buttron had been unable to maintain any gainful employment for the past five years. He noted that "[s]ince seen in our clinic, following surgery for renal carcinoma, he has had severe chronic depressive symptomatology, has exhibited severe thought disorder best characterized as looseness of associations, and has had chronic somatic symptomatology referrable to his orthopedic problems." Dr. Silverman stated that Buttron exhibits social withdrawal, a paucity of motivation and restriction of affect. He has no cognitive impairment. In the opinion of Dr. Silverman he cannot maintain gainful employment. The current diagnoses offered were chronic schizophrenia, residual type, alcoholism, resolved, and secondary major depression. On the form supplied by the Administration for estimating residual functional capacity, Dr. Silverman stated on January 23, 1984 that in his opinion the same level of severity set forth in his estimates had existed for at least three years.

On October 25, 1983, Dr. William Tomback noted that Buttron visited him complaining of pain in the ball of his right foot. Dr. Tomback's impression was bursitis. Buttron testified at the hearing that he is treated by Dr. Tomback, who he first saw in July or August of 1983, approximately once every ninety days.

Mr. Carl Henson, a clinical psychiatric social worker at Phelps Memorial Hospital

Mental Health Center, testified at the hearing. He felt that the diagnosis of schizophrenic, paranoid type, was a fair assessment of Buttron's condition. He noted that unless there are outside influences such as drugs or alcohol it can be controlled with a mild tranquilizer. Mr. Henson felt that Buttron's psychiatric impairment had existed at the same level of severity as it did when he examined him for at least three years; *i.e.*, since 1979. He suggested that this level of severity might be connected with something specific such as the cessation of work. He also mentioned Buttron's discovery of his mother's cancer, which he learned of in approximately 1980 but which was diagnosed as terminal in May or June of 1983, and Buttron's surgery, as possible factors.

Mr. Henson stated that Buttron had been on no anti-depressant or anti-psychotic medication until prescribed Nortryptaline by Dr. Silverman in September 1983. He indicated that in general schizophrenia interferes with an individual's ability to deal with physical disabilities.

At the hearing, Buttron stated that he first sprained his back in 1975 and then again in June 1977. In June 1976 three toes on the right were amputated. The absence of these toes causes a limp and imbalance in weight bearing. He takes pain medication and sees a chiropractor once a month. He complains of back pain, which has been present since 1975 and continued even after surgery removed a kidney in February 1983. He testified that he had intermittent impotence and difficulty sleeping during the period at issue which he attributed to stress and back and kidney pain. Buttron also testified that his emotional condition existed at the level of severity indicated by Dr. Silverman as early as 1979.

Buttron further testified that he drives on occasion, attends Alcoholics Anonymous meetings at a hall two blocks from his home, watches television, and very occasionally goes into town or socializes with friends from Alcoholics Anonymous. Buttron was also involved with a political organization at one point and in approximately September 1982 made phone calls during the campaign.

At the conclusion of the second hearing, the ALJ found that during the relevant time period Buttron suffered from arthritis, a severe impairment, but that he also possessed the residual functional capacity for sedentary work. Given Buttron's status as a younger individual with one year of college, the ALJ applied Rule 201.21 of Appendix 2 to Subpart P of 20 C.F.R. Part 404 to reach a conclusion of not disabled. The ALJ stated that "claimant's psychiatric condition is not relevant to a determination of his disability" because the record contained no medical evidence contemporary with the period at issue or any record of treatment during that period.

Buttron now claims that there was not substantial evidence to support the ALJ's finding that he was not under a disability during the relevant period. He claims that the ALJ gave insufficient weight to the testimony of Buttron's treating physicians as to Buttron's residual capacity for work and that the ALJ improperly chose to disregard evidence of his mental impairment.

### The Applicable Standard

In reviewing a denial of Social Security disability benefits, a court's function is to determine whether the Secretary applied proper legal principles in reaching a decision and whether that decision is supported by substantial evidence on the record as a whole. *Donato v. Secretary of Health and Human Services*, 721 F.2d 414, 418 (2d Cir.1983); *Spicer v. Califano*, 461 F.Supp. 40, 45 (N.D.N.Y.1978); 42 U.S.C. § 405(g). Substantial evidence in this context has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Donato v. Secretary of Health and Human Services, supra*, 721 F.2d at 418. The reviewing

court is not to decide the case *de novo*, and where supported by substantial evidence the Secretary's findings of fact, as well as the inferences and conclusions to be drawn from those findings, are conclusive even where the reviewing court's independent analysis of the evidence may differ from the Secretary's analysis. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982). As the trier of fact, it is the function of the Secretary, and not the court, to resolve conflicts in the evidence and to pass on the credibility of witnesses. *Richardson v. Perales, supra*, 402 U.S. at 399, 91 S.Ct. at 1426; *McLaughlin v. Secretary of Health, Education and Welfare*, 612 F.2d 701, 705 (2d Cir.1980).

For purposes of the Social Security Act, disability is defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.1982), the Second Circuit set forth a five-step sequence to be utilized in evaluating disability claims:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

In assessing an individual's disability, the Secretary must consider: (1) the objective medical facts, (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience. *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 41 n. 2 (2d Cir.1972); *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983). These elements of proof must be considered in combination with each other. *Bastien v. Califano*, 572 F.2d 908, 916 (2d Cir.1978).

Because I find that the ALJ failed to give appropriate weight to the medical opinions of Buttron's physicians in determining Buttron's residual functional capacity for sedentary work, the case must be remanded for reconsideration.

The Second Circuit has repeatedly emphasized that a treating physician's opinion is entitled to particular weight and is binding on the Secretary when it is not contradicted by substantial evidence. *See, e.g., Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir.1983); *Eiden v. Secretary of Health, Education and Welfare*, 616 F.2d 63, 64 (2d Cir.1980). The Second Circuit rule requires that "special weight ... be given to medical reports submitted by an applicant's attending physician" even if there is contradictory medical evidence supplied by the agency-appointed physician.

*Chiappa v. Secretary of HEW,* 497 F.Supp. 356, 360 (S.D.N.Y.1980). If the treating physician's opinion is rejected, specific, legitimate reasons for doing so must be provided. *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984). Furthermore, the record must reveal whether and to what extent the Secretary considered all significant evidence. *Wier v. Heckler,* 734 F.2d 955, 961 (3d Cir.1984); *Carnevale v. Gardner,* 393 F.2d 889, 891 (2d Cir.1968). It is inappropriate for any ALJ to substitute his own opinion for that of an expert presenting competent medical evidence.

In the present case, the ALJ referred to the July 28, 1982 report of Westchester County Medical Center, the October 20, 1982 x-rays of Buttron's hip and spine and Dr. Hirsch's June 6, 1983 statement. He noted that the x-rays revealed arthritic changes in the hips and minimal arthritic changes. He also noted that Dr. Hirsch reported moderate decreased range of motion of the hips and lumbar spine and diminished reflexes and sensory function of both legs, and stated that the x-rays relied on by Dr. Hirsch showed only minimal lumbroscral changes. After listing Buttron's problems with his feet, he stated that although Buttron complained of back pain at the hearing, he did not complain of severe foot pain. Finally, he noted that the postoperative course of Buttron's kidney removal was uneventful. Following his recitation of the above medical information, the ALJ stated that "[b]ased on the foregoing, I find that the claimant is able to sit without difficult, stand one hour, walk thirty minutes and lift and carry up to ten pounds. Accordingly, he possesses the residual functional capacity for sedentary work."

■ The ALJ's decision is not consistent with the expert opinion of Buttron's treating physician, Dr. Hirsch, and is not necessarily supported by the opinion of Dr. Moga.

The Regulations define sedentary work as:

... work involv[ing] lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). In the Second Circuit, the courts have generally required that a claimant be found capable of sitting approximately six hours in order to support a conclusion that he is capable of sedentary work. *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984).

In his June 6, 1983 statement, Dr. Hirsch expressly stated that "Mr. Buttron is physically unable to perform any type of occupation that would require prolonged sitting, standing, or even the mildest lifting." This opinion directly conflicts with a conclusion that Buttron could handle sedentary work. While Dr. Moga's reports are more ambiguous, they also do not seem to support the conclusion that Buttron retained the residual functional capacity for sedentary work. In his first report on Buttron, Dr. Moga indicated that Buttron was not capable of sustained physical activity but that intermittent periods of ambulation and sitting were possible. *See Ferraris v. Heckler, supra,* 728 F.2d at 587 ("[A]lternating between sitting and standing may not be within the concept of sedentary work.")

■ The ALJ's failure to give sufficient weight to Dr. Hirsch's opinion or to deal specifically with Dr. Hirsch's and Dr. Moga's findings constitutes reversible error. While the ALJ may not have been bound by Dr. Hirsch's conclusions if he reasonably determined that both Dr. Moga's opinion and the other medical evidence contradicted Dr. Hirsch's findings, he was required to give that opinion careful consideration and to set forth with specificity his reasons for rejecting that conclusion. *Ferraris v. Heckler, supra,* 728 F.2d at 587. The ALJ's opinion does not provide sufficient information for a determination of whether his conclusion is supported by substantial evidence. A mere reference to clinical findings that may or may not con-

tradict the conclusions of examining physicians is not enough to allow the ALJ to reject specific conclusions in favor of his own estimate of residual functional capacity. On remand, the ALJ must thoroughly evaluate the medical evidence, giving appropriate weight to the findings of the treating physicians, and provide convincing reasons for why his conclusion should stand despite the evidence submitted by Dr. Hirsch and Dr. Moga.

The grounds upon which the ALJ determined that Buttron was not suffering from a non-exertional disability during the relevant time period also constitutes reversible error. Both Dr. Silverman and Mr. Henson opined that Buttron's mental impairment existed in a disabling degree prior to the expiration of his insured status on December 31, 1982. Without expressly discussing these conclusions, the ALJ concluded that Buttron's psychiatric condition was irrelevant to any determination as to a disability on the grounds that the record contained no medical evidence contemporary with the period at issue. However, the mere fact that Dr. Silverman's diagnosis was made several years after the onset of Buttron's impairment does not invalidate its effect. *See Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir. 1981); *McBrayer v. Sec. of HHS,* 712 F.2d 795, 799 (2d Cir.1983). The ALJ was not entitled to ignore medical evidence simply because of a lack of contemporary findings. Furthermore, where a medical opinion remains unchallenged except by the ALJ's inference to the contrary, the ALJ cannot substitute his own judgment for competent medical opinion. *McBrayer v. Sec. of HHS, supra,* 712 F.2d at 799; *Grable v. Sec. of HEW,* 442 F.Supp. 465, 470 (W.D.N.Y.1977). On remand, the ALJ must accept Dr. Silverman's and Mr. Henson's medical conclusions as to the existence of Buttron's mental impairment prior to December 31, 1982 and make a determination based on their conclusions as to whether Buttron's mental condition entitled him to disability benefits. Because the ALJ declined to consider any evidence of a psychiatric impairment, he failed to apply the required five-step sequence. He must evaluate the evidence of Buttron's mental disability in accordance with the required sequence on remand.

In addition, even if the ALJ concludes on remand that Buttron's condition was not in and of itself enough to render him disabled within the meaning of the regulations, he must then consider the combined effect of Buttron's physical and mental impairments. *See DeLeon v. Sec. of HHS,* 734 F.2d 930, 934, 937 (2d Cir.1984); *Kolodnay v. Schweiker,* 680 F.2d 878, 880 (2d Cir.1982), 20 C.F.R. §§ 404.1522, 404.1545, keeping in mind that the rules pertaining to residual capacity may not be applicable where both exertional and non-exertional impairments are in existence. *See* Rule 200.00(e)(2) of Appendix 2, Subpart P, Part 404.

For the reasons discussed above, the decision of the Secretary is vacated and the case is remanded for further consideration in accordance with this opinion. The case is closed with leave to reopen *ab initio,* on the specific understanding that the court retains jurisdiction, on motion and without the payment of filing fees, to enter all necessary orders or conduct any necessary future proceedings in the case, as if it had not been closed.

IT IS SO ORDERED.