**Aurelia GARCIA, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 82 Civ. 7675(MEL).**

United States District Court,
S.D. New York.

Dec. 17, 1985.

Meltzer & Fishman, New York City, for plaintiff; Stanley F. Meltzer, Laura Sacks (on brief), of counsel.

Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., New York City, for defendant; Stephen A. Dvorkin, Asst. U.S. Atty., of counsel.

LASKER, District Judge.

Aurelia Garcia brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (1982) to review a final determination of the Secretary of Health and Human Services (the "Secretary") denying her application for Social Security disability benefits. Garcia moves and the Secretary cross-moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, Garcia's motion is granted insofar as it seeks a remand to the Secretary for

---

reconsideration upon the existing record. The Secretary's cross-motion is denied.

## BACKGROUND

The claimant was born in Puerto Rico in 1925, was educated through the third grade there, and cannot read or write English. She apparently has some difficulty communicating in English. For over twenty years prior to her application for disability benefits, Garcia worked as a cookie sorter and packager for the same company. Her job required her to remove broken cookies from a conveyor belt by hand and at times to package the unbroken cookies by hand. She performed this work approximately eight hours a day, primarily from a sitting position. The claimant left her job in 1981 complaining of pain and swelling in her hands and arms.

Garcia filed applications for disability insurance and supplementary security income benefits on June 18, 1981 based upon problems with her arms, gall bladder and appendix. The Secretary denied her applications initially on August 28, 1981 and on reconsideration on December 17, 1981. The claimant then requested a *de novo* disability hearing, which was held on April 26, 1982 before Administrative Law Judge Jonathan Jacobs (the "ALJ"). At this hearing the claimant and the claimant's vocational expert testified, and the ALJ received in evidence medical records and evaluations submitted by three physicians as well as the written evaluation submitted by the vocational expert.

The evidence before the ALJ may be summarized as follows:

1. The claimant testified that she had been forced to stop working in 1981 as a result of her medical condition, that she continued to experience pain in her hands and shoulders, and that she took Tylenol several times a day to alleviate the pain. She explained that she was able to sit and stand without difficulty, but not for prolonged periods. Garcia also stated that she required the assistance of her daughter to take care of her daily needs, though she was able to do some cooking and cleaning, to wash dishes and clothes, to tend house plants and shop with her daughter, and on occasion to attend church and go visiting. Record at 28–35.

2. The claimant's vocational expert, Edmond Provder, stated in his testimony and in his written report that Garcia's performance on standardized tests measuring fine, medium, and gross movements of the arms and hands was well below competitive levels for people who are industrially employed. He found that the claimant had difficulty using both hands for continuous repetitive movements such as grasping, that she lacked strength in both arms and hands, and that she experienced pain and fatigue after working at the tests for three hours. In response to a question from the ALJ, the vocational expert testified that the claimant's test results were internally consistent and that he believed she was trying to do her best. He also noted that Garcia had trouble following directions more complex than two- and three-step instructions, even when verbal directions were accompanied by repeated demonstrations. The vocational expert concluded before the ALJ that the claimant did not have the dexterity to perform her former job and stated in his report that she was unable to perform any substantial gainful activity on a sustained basis. Record at 35–45, 51–52, 145–46.

3. The claimant's treating physician, Mark S. Feierstein, examined her at the request of her employer on a number of occasions between January 29, 1979 and March 31, 1981. Dr. Feierstein's examinations and interpretations of diagnostic tests in 1979 led him to diagnose Garcia's condition as "medial epicondylitis" (inflammation of the connective material or adjoining tissue which is attached to the bone that extends from shoulder to elbow [1]) "with possible intermittent compression of the ulnar nerve based on exaggerated cubitus

---

**1.** The parenthetical explanations of medical terms in this opinion have been drawn from

DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (23d ed. 1957).

vulgus" (pinched nerve resulting from a deformity in the forearm). Tests in late 1979 disclosed a developing nerve problem at the right elbow, and the claimant underwent surgery to correct the problem in early 1980. Although post-operative examinations and tests indicated that the nerve problem had been substantially corrected, Dr. Feierstein concluded in a March 31, 1981 letter to Garcia's employer that she "continue[s] to have the problem with tendonitis" and that "it is unlikely that she will in the future be able to be employed in an occupation that requires repeated manipulative skills with the right upper extremity." Record at 115–33.

4. The Secretary's consultative examiner, Dr. Peter Strassberg, who appears to have examined the claimant on one occasion in July 1981, noted that she had had surgery on her left elbow in 1976 as the result of an accident, in addition to the corrective surgery on the right elbow in 1980. He diagnosed her complaints of pain in the shoulders and pain and swelling in the hands as "osteoarthritis" (chronic degenerative joint disease) and attached an x-ray report in which Dr. M. Eliot Gold noted that the shoulder x-ray indicated "peritendinitis calcerea" (painful inflammation of tendon sheath marked by calcium deposits). Dr. Strassberg also found in his examination that Garcia experienced a decreased range of motion due to pain, that she could raise both her arms above the horizontal, that she could make a full fist with both hands, and that digital dexterity was good. He indicated on a questionnaire entitled "Residual Functional Capacity Evaluation" that the claimant could sit for eight hours and walk or stand for two hours in a normal work day, could occasionally lift or carry up to fifty pounds, could frequently bend, squat, crawl, climb and lift or carry up to ten pounds, and could use both hands for repetitive grasping, pushing or pulling, and fine manipulations. Record at 134–39.

5. The claimant's consultative examiner, Dr. Justus Kaufman, examined her on March 4, 1982 without the benefit of her medical and hospital records. He diagnosed the claimant as suffering from "hy-pertrophic osteoarthritis" (chronic degenerative joint disease marked by enlargement of bone and cartilage) of the back, arms, neck, and hands. Although Dr. Kaufman found no impairment of movement in Garcia's elbows or wrists, he noted some restriction in arm and neck movement, marked weakness in hand-grasp, and problems with digital dexterity. He indicated on a questionnaire entitled "Physical Capacities Evaluation" that the claimant could sit or stand for two hours in a normal work day, could occasionally lift or carry up to ten pounds, could crawl, climb, and reach above shoulder level, but could not bend, squat, or use either of her hands for repetitive grasping, pushing or pulling, and fine manipulation. Record at 140–41.

In a decision dated June 16, 1982, the ALJ determined that Garcia was not "disabled" within the meaning of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A), because although he found that under the regulations, 20 C.F.R. §§ 404.1521, 416.921 (1982), she was severely impaired, he concluded that she had the residual functional capacity to do her previous work, 20 C.F.R. §§ 404.1561, 416.-961. This determination became the final decision of the Secretary when it was adopted by the Appeals Council on September 27, 1982.

## DISCUSSION

### I.

For purposes of both disability insurance and supplemental security income eligibility, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The regulations promulgated by the Secretary set forth a five-step sequence to be used in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920. As the Court of Appeals for the Second

Circuit explained in *Berry v. Schweiker,* 675 F.2d 464 (2d Cir.1982):

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.... [T]he claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

675 F.2d at 467.

It is not the function of a reviewing court to determine *de novo* whether a claimant is disabled. *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984). A factual determination by the Secretary must be given conclusive effect by the court if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983). The Supreme Court has defined "substantial evidence" as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The reviewing court may only set aside a determination which is based upon legal error or not supported by substantial evidence. *Berry v. Schweiker,* 675 F.2d at 467.

In the instant case, the claimant does not dispute the ALJ's findings as to the first three inquiries prescribed in the regulations. In his June 16, 1982 decision, the ALJ found (1) that Garcia had engaged in no substantial gainful activity since she left her job in March 1981; (2) that Garcia was severely impaired, since her impairment significantly limited her ability to perform work-related functions; and (3) that Garcia's impairments did not meet or equal any of the listed impairments found in Appendix 1 of Subpart P of Part 404 of the regulations. Record at 13–14.

Furthermore, although the ALJ did not reach the fifth inquiry—in which the Secretary has the burden of showing that there is work other than the claimant's past work which she could perform—there is little doubt that if Garcia were found to lack the residual functional capacity to do her past work, the Medical-Vocational Guidelines (the "grids") contained in the regulations would "direct" a conclusion of disability. Pt. 404, subpt. P, app. 2, § 200.00(a). This is so because even if Garcia were determined to possess the exertional capacity for sustained sedentary (20 C.F.R. § 404.1567(a)) or light (20 C.F.R. § 404.1567(b)) work,[2] the combination of her age (advanced: 20 C.F.R. §§ 404.1563(d), 416.963(d)), education (marginal: 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2)), and previous work experience (unskilled: 20 C.F.R. §§ 404.1568(a), 416.968(a)) would, under the regulations, mandate a finding that she was unable to engage in alternative, substantial gainful activity and that she was therefore disabled. Pt. 404, subpt. P, app.

---

**2.** Even under the most optimistic functional capacity evaluation in evidence, that of the Secretary's consultative examiner, Garcia would not be considered capable of sustained "medium" work, which is defined in the regulations as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

2, tables 1–2 at 201.01 & 202.01. *See also, e.g., Parker v. Harris,* 626 F.2d 225, 234 (2d Cir.1980) (applying grid); *Epps v. Secretary of Health and Human Services,* [Mar. 1982–Feb. 1983 Transfer Binder] UNEMPL.INS.REP. (CCH) ¶ 14,412 (E.D.N.Y. Aug. 16, 1982) (same). At the April 26, 1982 hearing, the ALJ accepted this very analysis and conclusion. Record at 44–45.

Consequently, the sole issue for review in this case is the ALJ's finding on the fourth inquiry: that Garcia has the residual functional capacity to perform her past work as a cookie sorter and packager. Record at 14. Although mindful that the scope of review of the Secretary's decision is narrow, I conclude that the record establishes that the decision of the ALJ, which stands as the final decision of the Secretary in this case, failed to adhere to the rules of this circuit governing the consideration of the opinions of treating physicians and cannot be found on the present record to be supported by substantial evidence.

## II.

Garcia's treating physician, Dr. Feierstein, examined the claimant on what appears to be at least sixteen occasions over a two-year period. He diagnosed Garcia's medical condition throughout the two years as chronic inflammation of the area around the right elbow, recommended surgery to correct a nerve problem he believed might be the cause of her problem, ultimately determined that nothing could be done to eliminate her pain and swelling, and concluded that it was unlikely that she could perform a job that required repeated manipulations with the right upper extremity. The claimant's consultative examiner, Dr. Kaufman, diagnosed Garcia as suffering from an arthritic condition of the back, arms, neck, and hands and confirmed the treating physician's prognosis in finding that she was not able to use her hands for repetitive grasping or fine manipulating. The claimant's vocational expert concluded from Garcia's performance on a battery of tests that her impaired dexterity in the upper extremities, lack of strength in arms

and hands, and difficulty using her hands for repetitive movements would prevent her from performing her former job.

Set against the foregoing findings and conclusions is the report of the Secretary's consultative examiner, Dr. Strassberg. Although his diagnosis and that of the radiologist whose report he consulted confirmed the findings of the claimant's treating and consultative physicians, and although he found movement in the claimant's elbows and shoulders restricted due to pain, Dr. Strassberg differed with the claimant's experts to the extent that he found Garcia's digital dexterity and muscle strength "good" and determined that she was able to use her hands for repetitive grasping and fine manipulations.

The courts of this circuit have held repeatedly that the expert opinion of a treating physician on the subject of disability is binding on the Secretary unless contradicted by substantial evidence to the contrary. *Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *see also Lemberger v. Heckler,* 579 F.Supp. 49, 51 (E.D.N.Y. 1984) (collecting cases). In the instant case Garcia's treating physician was of the opinion that she did not have the residual functional capacity to do her past work. The only conflicting medical evidence consisted of the report of the Secretary's consultative examiner. There is doubt as to whether the consultative examiner's opinion was of sufficient weight to constitute substantial evidence contrary to the treating physician's conclusions in light of the fact that the consultative examiner, Dr. Strassberg, saw Garcia on only one occasion while the treating physician, Dr. Feierstein, examined her numerous times over a two-year period. *See Bluvband v. Heckler,* 730 F.2d 886, 893–894 (2d Cir.1984). " '[O]nce it is determined that an impairment exists, the opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once, especially where he has treated the claimant over a substantial period of time.' " *Edwards v. Secretary, De-*

*partment of Health and Human Services,* 572 F.Supp. 1235, 1243 (E.D.N.Y.1983) (quoting *Selig v. Richardson,* 379 F.Supp. 594, 601 (E.D.N.Y.1974)); *see also Newman v. Secretary of Health and Human Services,* No. 83–2841, slip op. at 4, (E.D.N.Y. Mar. 26, 1985) (according little weight to opinion as to functional capacity of consulting physician who examined claimant once).

■ The ALJ in this case appears to have adopted the opinion of the Secretary's consultative examiner in preference to that of the treating physician—in disregard of the rule in this circuit governing consideration of expert medical opinions—without indicating his reasons for rejecting the opinion of the treating physician as to Garcia's residual functional capacity. He made no attempt to "compare the probative value of the treating physician's opinion with the probative value of the conflicting evidence," *Bluvband v. Heckler,* 730 F.2d at 893, as he was bound to do. We agree with the rule recently stated by Judge Sweet: "If the treating physician's opinion is rejected, specific, legitimate reasons for doing so must be provided." *Buttron v. Heckler,* 610 F.Supp. 763, 769 (S.D.N.Y. 1985); *accord Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984); *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983); *Wiggins v. Schweiker,* 679 F.2d 1387, 1390 (11th Cir.1982); *but see Allen v. Heckler,* 749 F.2d 577, 579–80 (9th Cir.1984) (rejecting requirement of explanation).

In sum, though "genuine conflicts in the medical evidence are for the Secretary to resolve," *Aponte v. Secretary, Department of Health and Human Services,* 728 F.2d 588, 591 (2d Cir.1984), on the present record there is no genuine conflict to resolve. As the Court of Appeals for the Second Circuit stated in *Bluvband:*

> This analysis is not meant to suggest that the ALJ could not at all credit the residual functional evaluation of the consulting physicians as against [the claimant's] testimony. We only conclude that such evaluations—which are critically disputed in a way that the ALJ failed to

explore, and which were formulated after the physicians had examined the claimant only once—do not, under the facts presented here, constitute substantial evidence contradicting the treating physician's opinion of total disability.

*Bluvband v. Heckler,* 730 F.2d at 894.

### III.

■ Apart from the ALJ's failure to conform his determination to the rules of this circuit regarding the consideration of the treating physician's opinion, we have serious doubt as to whether on the present record his decision is supported by substantial evidence. Not only the treating physician but also the claimant's consultative examiner and the vocational expert found that Garcia lacked the residual functional capacity to do her past work. Yet the ALJ, while reporting in detail the findings of all the experts, simply accepted the Secretary's consultative examiner's conclusions without setting forth any reasons for his rejection or discounting of the conclusions of either the treating physician or the claimant's consultative examiner.

Although the ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony," *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981), the Court of Appeals for this circuit has stated that

> the crucial factors in any determination must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence. *Treadwell v. Schweiker,* 698 F.2d 137, 142 (2d Cir.1983) ("the propriety of agency action must be evaluated on the basis of stated reasons.").

*Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984). *See also Berry v. Schweiker,* 675 F.2d at 469 ("Cases may arise ... in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record...."); *Flores v. Department of Health, Education and Welfare,* 465 F.Supp. 317, 320 (S.D.N.Y.1978) (" 'if reliance is placed on one portion of the record in disregard of overbalancing evidence to the contrary, the court may then interfere

with the Secretary's conclusion,'" quoting *Hofacker v. Weinberger*, 382 F.Supp. 572, 576 (S.D.N.Y.1974)).

The ALJ did explain his reasons for discounting the testimony of the vocational expert and Garcia herself. Because this case is remanded for further findings with respect to the claimant's ability to perform her past work, it is appropriate to discuss briefly the deficiencies in the ALJ's treatment of this evidence.

In discussing the vocational expert's testimony and report, the ALJ stated in his decision:

> I have serious misgivings as to whether his tests administered to a Spanish speaking person are entitled to the full validity that I might otherwise attach to such an experts [sic] findings. The expert attempted to demonstrate that in recognition of the language problem ... he actually showed claimant how to do the tasks involved in the tests. Misapprehension, general misunderstanding, and lack of spontaneity are to be expected under such conditions. Therefore, I accord his findings such weight as is deemed warranted under the above described circumstances.

Record at 13. It is not at all apparent from the evidence in the record that Garcia's English language limitation compromised the validity of the vocational test results. The vocational expert testified before the ALJ that he used simple verbal instructions in English and physical demonstrations and that the claimant was able to understand his directions. The vocational expert explained that

> [the claimant] also, before the test was started, had to perform the test, a part of the test satisfactorily, so that I knew that she was able to understand it, the instructions, either through the English or through the demonstration. When she did not know how to do it, I would reinstruct her again through demonstration, so I feel that ... she did know, did understand the instructions....

Record at 52. The difficulty experienced by the claimant with the more complex directions required by some of the tests could well be the result not so much of communication problems as of Garcia's cognitive limitations, and in any event appears to have related to only a few of the tests. Record at 142–43. Moreover, in some respects the vocational expert is in the same position as the examining physicians with respect to the problems created by a language barrier. For example, Dr. Feierstein noted on two occasions that the language barrier made sensory examination difficult. Record at 124, 129. In fact, the vocational expert's ability to resort to non-verbal demonstrations to communicate his message probably places him in a better position in this regard.

Consequently, the ALJ's doubts about the validity of the vocational expert's findings are unfounded. Furthermore, it is not possible to ascertain from the words, "I accord his findings such weight as is deemed warranted under the above circumstances," to what extent the ALJ discounted or rejected the expert's conclusions.

The ALJ also found in his decision that "a careful look at [the claimant's] activities indicate [sic] that claimant's manual dexterity is not diminished to the point where she could be unable to use her hands and fingers on a regular sustained basis." Record at 14. Based in part on this finding, the ALJ concluded that Garcia had the residual functional capacity to return to her past work. The ALJ noted the claimant's activities earlier in his decision, stating: "She is able to dress herself including opening and closing of buttons,[3] wash dishes, make beds, do the shopping, enjoy taking care of plants, occasionally visiting, and going to church as well." Record at 14.

The record evidence of Garcia's activities simply does not supply any basis for the conclusion that she is capable of performing her past work, which entailed repetitive movements of shoulder and elbow as well

---

3. The claimant correctly points out that nowhere in the record is there any indication that Garcia is able to dress herself or any reference to her manipulation of buttons.

as good manual dexterity *on a continued basis over an eight-hour period.* "There was no proof that [the claimant] engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job." *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 643 (2d Cir.1983). The courts of this circuit have routinely rejected such evidence as irrelevant to the disability determination without some indication that a claimant can perform normally for more than a short period of time. *See McGuire v. Heckler,* 589 F.Supp. 718, 723 & n. 30 (S.D.N.Y.1984) (Weinfeld, J.).

\*     \*     \*

Accordingly, the decision of the Secretary is reversed and the case is remanded for further findings consistent with this opinion. Specifically, the case is remanded to permit the ALJ to thoroughly evaluate the medical and vocational evidence, giving appropriate weight to the findings of the treating physician, and to permit him to state the reasons for his conclusions.

It is so ordered.